DONALD PET *v.* DEPARTMENT OF
HEALTH SERVICES ET AL.
(14657)

PETERS, C. J., CALLAHAN, BERDON, KATZ and PALMER, Js.

Argued October 28, 1993—decision released March 8, 1994

*Thomas J. Ring,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellants-appellees (defendants).

*Donald Pet,* pro se, the appellee-appellant (plaintiff).

PETERS, C. J. The dispositive issue in this administrative appeal is whether the trial court properly refused to supplement the record with evidence of alleged procedural irregularities to establish a violation of the Uniform Administrative Procedure Act (UAPA), and, specifically, General Statutes (Rev. to 1985) § 4-179.[1]

---

[1] Because the agency proceedings in this case commenced on or before July 1, 1989, the provisions of the UAPA in effect prior thereto are appli-

The defendant Connecticut department of health services (department) brought charges against the plaintiff, Donald Pet, a psychiatrist, alleging certain violations of General Statutes (Rev. to 1985) § 20-13c[2] in relation to his psychiatric treatment of four female patients. The defendant Connecticut medical examining board (board),[3] after an evidentiary hearing by a panel of board members, concluded that the plaintiff

cable. *Vernon Village, Inc.* v. *Carothers,* 217 Conn. 130, 585 A.2d 76 (1991). All statutory citations in this opinion, therefore, refer to those which were effective at the time the hearing commenced.

General Statutes (Rev. to 1985) § 4-179 provides: "PROPOSAL FOR DECISION. PROCEDURE. WAIVER. When in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the officials who are to render the decision. The proposal for decision shall contain a statement of the reasons therefor and of each issue of fact or law necessary to the proposed decision, prepared by the person who conducted the hearing or one who has read the record. The parties by written stipulation may waive compliance with this section."

[2] General Statutes (Rev. to 1985) § 20-13c provides in relevant part: "RESTRICTION, SUSPENSION OR REVOCATION OF PHYSICIAN'S RIGHT TO PRACTICE. GROUNDS. The board is authorized to restrict, suspend or revoke the license or limit the right to practice of a physician in accordance with section 19a-17, when the board finds that such physician is unable to practice medicine with reasonable skill or safety for any of the following reasons . . . (2) emotional disorder or mental illness . . . (4) illegal, incompetent or negligent conduct in the practice of medicine; (5) possession, use, prescription for use, or distribution of controlled substances or legend drugs, except for therapeutic or other medically proper purposes . . . ."

[3] The defendants are agencies within the meaning of General Statutes § 4-166 (1) and are subject to the provisions of the UAPA, General Statutes § 4-166 et seq. The department exists pursuant to General Statutes § 19a-1 et seq. and the board exists pursuant to General Statutes (Rev. to 1985) § 20-8a et seq. The board consists of nine members, six of whom are physicians, and is authorized to "(1) hear and decide matters concerning suspension or revocation of licensure, (2) adjudicate complaints against practitioners and (3) impose sanctions where appropriate." General Statutes (Rev. to 1985) § 20-8a (e); see *Pet* v. *Department of Health Services,* 207 Conn. 346, 347 n.1, 542 A.2d 672 (1988).

had violated § 20-13c (4) and (5), and ordered that the plaintiff's license to practice be suspended for five years, after which his practice would be limited to supervised group therapy only within an institutional setting.

The plaintiff appealed to the Superior Court,[4] which sustained the plaintiff's appeal and remanded the case to the board for a new hearing, on the ground that the plaintiff's due process rights had been violated because the board had improperly curtailed the plaintiff's right to cross-examine an adverse expert witness.[5] The trial court, in response to the defendants' motion to articulate, stated that the prior administrative proceeding was effectively nullified by its order for a new hearing. The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

We disagree with the trial court's determination that, under the facts of this case, the limitation of the plaintiff's cross-examination of an adverse witness violated due process, and we reverse on that issue. We conclude, however, that the record is insufficient to determine whether the board complied with the mandates of the UAPA, and that the trial court improperly reached a conclusion that the board had so complied. Because of the trial court's improper failure to permit the plaintiff to supplement the record with tapes of relevant board meetings and additional testimony regarding alleged procedural errors, we remand the case to the trial court for further proceedings.

---

[4] On appeal to the Superior Court, the plaintiff claimed that: (1) he was denied due process of law; (2) the board improperly increased the penalty recommended by the panel; (3) the board held the plaintiff accountable to the wrong standard of care; and (4) insufficient evidence existed to support the board's findings.

[5] The trial court rejected the plaintiff's remaining claims. See footnote 4.

The relevant procedural history of this action may be summarized as follows. The department charged the plaintiff with having failed to provide several patients with proper psychiatric care and treatment in violation of § 20-13c (2) and (4).[6] A hearing before a designated panel of the Connecticut medical examining board (panel) regarding these charges commenced on June 24, 1986, and continued on twenty different days, ending on August 29, 1989.[7] The panel consisted of four members of the board, but attendance throughout the days of the hearing ranged from one to four members.[8] The

[6] The plaintiff was originally served with a statement of charges and notice of hearing on April 19, 1986. The department issued an amended statement of charges on June 9, 1986, and a second amended statement of charges on June 20, 1986, prior to the commencement of the hearing on June 24, 1986.

[7] The hearing dates were: June 24, 1986, November 4, 1986, April 28, 1987, August 9, 1988, August 16, 1988, September 27, 1988, October 4, 1988, November 29, 1988, December 6, 1988, January 31, 1989, February 7, 1989, March 14, 1989, March 21, 1989, April 18 and 25, 1989, May 9 and 23, 1989, June 27, 1989, July 25, 1989 and August 29, 1989.

The dissent criticizes the protracted nature of this case. It is worth noting that the agency hearing was delayed during the pendency of an interlocutory appeal brought by the plaintiff on November 13, 1986, in the Superior Court. In that appeal, the plaintiff challenged the hearing procedures and sought injunctive relief. The Superior Court, *Spada, J.*, ordered that the plaintiff be accorded prehearing discovery consistent with the civil rules of discovery, that the hearing be concluded by a specified date, and that whichever panel member participated in the decision be required to either hear the entire case or read the entire record in toto. *Pet* v. *Department of Health Services*, 207 Conn. 346, 349–50, 542 A.2d 672 (1988). The defendants appealed that action to the Appellate Court, and we transferred the case to this court. We dismissed the action on May 10, 1988, for failure of the plaintiff to exhaust his administrative remedies. Id., 347. The panel hearing was reconvened once while the appeal was pending at the Supreme Court, on April 28, 1987, in order to hear and rule upon various motions made by both parties.

[8] Of a total of twenty hearing days, the designated panel chairperson Harvey Mandell attended approximately seventeen and one-half meetings (87.5 percent); panel member Shirley Williams attended seventeen meetings (85 percent), during three of which she stood in as chairperson for Mandell and arrived late for at least one; panel member Richard Harris attended sixteen meetings (80 percent); and panel member Joan Blakeslee attended eight

person chairing the hearing varied, with a different panel member acting as chairperson on days when the appointed chairperson was absent.

During the course of the hearing on December 29, 1988, the department issued a third amended statement of charges against the plaintiff. That statement of charges alleged in eighteen counts that, in violation of § 20-13c (2), (4) and (5),[9] the plaintiff had engaged in sexual conduct with four patients, had provided psychiatric care to employees, had mishandled the "transference phenomenon" with four patients, had improperly conducted a "sexological examination" of one patient, had improperly monitored the prescription of medication to one patient and had failed to respond properly to issues raised by one patient. The board eliminated several of these charges during the course of the hearing, including those relating to the plaintiff's psychiatric relationship with employees.

After the conclusion of the hearing, the department submitted to the panel a recommended "Proposal for Decision." Thereafter, on February 26, 1991, pursuant to General Statutes (Rev. to 1985) § 4-179, the panel issued a formal "Proposal for Decision." In March, 1991, the plaintiff filed a brief responding to both the department's and the panel's proposal for decision.

The parties presented oral arguments to the board at its March 19, 1991 meeting. The minutes of that board meeting state that, "[m]embers of the Board asked Dr. Williams for her opinion on the case, as she is the only remaining original Panel member who heard the case. Dr. Williams stated that, while she is the only Board member left, Dr. Mandell and Mr. Harris were actively involved in the drafting of the Proposal for

---

meetings (40 percent). No panel member heard all of the testimony presented by the four complaining witnesses and the plaintiff.

[9] See footnote 2.

Decision and the Proposal reflects the unanimous feeling of the Panel. Dr. Williams continued that there was a lot of material presented, and she has read the entire record." The board then voted to table a decision until the next month and requested that the department file a response to the plaintiff's brief by April 2, 1991.

On April 16, 1991, the board voted to strike one additional paragraph from the statement of charges. It also amended the proposal for decision by increasing the period of suspension of the plaintiff's license from three years to five years, and by adding a restriction that the plaintiff's practice thereafter be confined to group therapy within an institutional setting while under the supervision of a senior clinician approved by the board. The board's final decision, on April 23, 1991, reflected these changes, and concluded that the plaintiff had violated § 20-13c (4) and (5) with respect to the charges of inappropriate sexual conduct, mishandling of transference, misprescribing of medication and failing to monitor a patient. After the board denied the plaintiff's subsequent request for reconsideration, he instituted an appeal to the Superior Court, which, as has been previously noted, was sustained.

On appeal to this court, the defendants claim that the trial court improperly: (1) concluded that the board had violated the plaintiff's due process rights by limiting his cross-examination of the department's expert witness; and (2) nullified the prior administrative proceeding and ordered a new hearing. The plaintiff has cross appealed, claiming that the trial court improperly rejected his remaining constitutional and statutory claims and, accordingly, improperly failed to order dismissal of the charges against him. While we agree with the defendants' first claim, we also agree with the plaintiff that the trial court improperly denied him his statutory right to supplement the administrative record to prove that procedural irregularities undermined the

fairness of the proceedings against him. A further hearing in the trial court will therefore be required. Additional facts are set forth below as necessary.

I

The defendants first claim that the trial court incorrectly held that the board had violated the plaintiff's due process rights by limiting his cross-examination of the department's sole expert witness. We agree with the defendants that the limitations placed on the plaintiff's cross-examination of that witness did not violate due process.

With respect to this issue, the trial court found the following facts. "At the administrative hearing held on April 18, 1989, the Department presented as its expert witness, Dr. Kenneth Selig, a psychiatrist and a graduate of Yale Law School. During its direct examination, the Department elicited from Dr. Selig his professional opinion on most of the charges it had brought against the plaintiff.

"Generally speaking, Dr. Selig's testimony on direct examination supported the positions taken by the Department. Thus, Dr. Selig testified about the Department's charges that the plaintiff violated General Statutes § 20-13c in connection with his employment of patients, his management of the 'transference phenomenon,' his alleged sexual contact with patients, his conduct of a 'sexological examination' of a patient, and his prescription and monitoring of medication for his patients. . . . The direct examination consumed most of the morning of April 18, 1989.

"Before noon on April 18, the plaintiff began his cross-examination of Dr. Selig. The hearing was adjourned that day at 12:20 p.m. The cross-examination continued at the next session, one week later on April 25.

"Analysis of the record of the cross-examination reveals that it covered all of the topics which were the subject of the direct examination. Additionally, the plaintiff pursued many questions aimed at weakening the witness's credibility, especially in the area of the witness's own training, experience, and current professional practice. Some of the cross-examination was effective in weakening the Department's position on the charges against the plaintiff. This was particularly true concerning the charge that the plaintiff improperly hired some of his patients to work in this clinic. The Board ultimately exonerated the plaintiff on this charge."

Our examination of the record reveals that the panel chairperson repeatedly admonished the plaintiff to discontinue a line of questioning on the differences between schools of psychiatric theory, and in particular how each manages the "transference phenomenon," because the questioning had become repetitive and nonproductive. At the same time, the chairperson noted on the record that the board fully understood that different schools of psychiatric theory existed and that Selig did not profess to hold the only view available. Nevertheless, the plaintiff persisted with this line of questioning. After the chairperson's efforts to limit the cross-examination on this subject had failed, the chairperson finally advised the plaintiff that his cross-examination would end after one additional hour.

The plaintiff thereafter resumed his cross-examination of Selig until the chairperson stopped him because the allotted time had expired. Opposing counsel was then permitted to conduct a redirect examination. The chairperson completed the examination of Selig with his own questions.

The trial court concluded from this record that: "[T]he Board, acting through the chair[person] of the

hearing panel, violated the plaintiff's legal right to cross-examine fully and adequately an important opposing witness. The Board's action was arbitrary and constituted an abuse of its discretion. In so acting, the Board prejudiced a substantial fundamental right of the plaintiff.''

"[W]here a party appeals pursuant to the jurisdictional grant of the UAPA, the agency action is measured by the standards contained within the UAPA.'' *McDermott* v. *Commissioner of Children & Youth Services,* 168 Conn. 435, 441, 363 A.2d 103 (1975). We, therefore, review the merits of the defendants' claims in the context of the limited scope of judicial review afforded by the UAPA to determinations made by an administrative agency.[10] *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). "With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . The present

---

[10] General Statutes (Rev. to 1985) § 4-183 (g), now codified at § 4-183 (j), provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

appeal is from the decision of the trial court. We review that decision only to determine whether it was rendered in accordance with the [UAPA]." (Citations omitted; internal quotation marks omitted.) Id.

We have held repeatedly that "the 'procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause.' *Adamchek* v. *Board of Education,* 174 Conn. 366, 369, 387 A.2d 556 (1978); *Taylor* v. *Robinson,* 171 Conn. 691, 698, 372 A.2d 102 (1976)." *Pet* v. *Department of Health Services,* 207 Conn. 346, 356–57, 542 A.2d 672 (1988). While the UAPA provides that in contested cases "a party may conduct cross-examinations required for a full and true disclosure of the facts"; General Statutes (Rev. to 1985) § 4-178 (3), now codified at § 4-178 (5); it also provides that "the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence." General Statutes (Rev. to 1985) § 4-178 (1). The facts of this case regarding this issue come dangerously close to establishing a violation of the mandates of the UAPA. In particular, we believe that a time specific limitation, as opposed to a content specific one, was inappropriate.[11] We nevertheless conclude that, in this case, the

---

[11] The trial court concluded that the panel chairperson's time limitation was punitive in nature and therefore arbitrary and unlawful. We do not agree with this conclusion, although aspects of the manner in which the chairperson handled this hearing do lend cause for concern. In particular, the chairperson repeatedly and inappropriately restructured the plaintiff's questions on cross-examination by advising the plaintiff to bundle his questions. In doing so, the chairperson speculated on the answers that the plaintiff would receive. The transcripts of the hearing are also replete with remarks by the chairperson and panel members that, albeit intended as humor, were made at the expense of the plaintiff and lend an air of impropriety and bias to the hearings. Such actions are inappropriate at any administrative hearing and are especially inappropriate at one involving so grave an issue as license suspension. "An administrative hearing does not have to match the model of a trial in court. . . . It must, however, meet some modicum of orderly and fair procedure." (Citation omitted.) *Zanavich* v.

limitation of the plaintiff's cross-examination of the department's expert was not unlawful.

The plaintiff was afforded an opportunity to raise each and every matter brought out on direct examination in his cross-examination of Selig. The plaintiff succeeded in his cross-examination in obtaining repeated admissions by Selig that he was not qualified to comment conclusively on the behavioral school of psychiatry, and by all appearances was seeking to have Selig once again repeat such admissions at the time the chairperson terminated his cross-examination. The plaintiff was asked repeatedly to terminate his questioning of Selig concerning the separate schools of psychiatry, and was assured that the panel understood that Selig recognized that there are different schools. The chairperson had issued numerous warnings to the plaintiff before ultimately placing a time limit on the plaintiff's cross-examination, in response to what appeared to the chairperson to be behavior "contemptuous of the panel" and in total disregard of his previous admonishments. The chairperson's recourse to a time limitation, after his attempts to limit the repetitive content of the questions had failed, was not necessarily punitive or arbitrary. In fact, the plaintiff did move on to other topics after the time limitation was imposed.

Furthermore, we cannot say that the chairperson acted unlawfully in imposing this limitation merely because counsel for the department joined the plaintiff in opposing the limitation. It was within the province of the board to limit the admission of "unduly repetitious evidence." General Statutes (Rev. to 1985) § 4-178 (1). The plaintiff's cross-examination took approximately five hours over the course of two hear-

Board of Education, 8 Conn. App. 508, 512, 513 A.2d 196, cert. denied, 201 Conn. 809, 515 A.2d 381 (1986). We strongly caution administrative agencies to observe the proper decorum during agency hearings, particularly when the agency is functioning in a quasi-judicial capacity.

ing days. The direct examination, on the other hand, had taken approximately one hour. Although time, per se, does not reflect the adequacy of the cross-examination, it is one factor to consider in determining whether the plaintiff's right to cross-examination was violated.

Cross-examination regarding "motive, interest, bias or prejudice . . . is a matter of right and may not be unduly restricted" (internal quotation marks omitted); *State* v. *Lewis,* 220 Conn. 602, 621, 600 A.2d 1330 (1991); but that right is nevertheless " 'subject to reasonable limitation.' " Id.; *State* v. *Vitale,* 197 Conn. 396, 401, 497 A.2d 956 (1985); see also *Delaware* v. *Van Arsdale,* 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). "When the absolute right of cross-examination has been fully and fairly exercised, its extent becomes subject to the sound discretion of the [presiding official who] may exercise a reasonable judgment in determining when the line of inquiry has been exhausted. . . . The [presiding official] has broad discretion in deciding the relevancy of evidence as it pertains to cross-examination . . . and on appeal the appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. . . . We have stated that the test of cross-examination is whether there has been an opportunity for full and complete cross-examination rather than the use made of that opportunity." (Citations omitted.) *State* v. *Jones,* 167 Conn. 228, 232–33, 355 A.2d 95 (1974). The record in this case does not support a conclusion that the plaintiff was deprived of an opportunity for full and complete cross-examination.

Even if we were to conclude that the panel had impaired the plaintiff's right to cross-examine Selig, the plaintiff cannot meet his burden of showing sub-

stantial prejudice. *Jutkowitz* v. *Department of Health Services,* 220 Conn. 86, 94, 596 A.2d 374 (1991); *Concerned Citizens of Sterling, Inc.* v. *Connecticut Siting Council,* 215 Conn. 474, 489, 576 A.2d 510 (1990); *Levinson* v. *Board of Chiropractic Examiners,* 211 Conn. 508, 536, 560 A.2d 403 (1989). In administrative appeals, we have held that the failure to utilize a remedy available to cure a defect deprives a complainant of the right to object to the alleged defect. *Dragan* v. *Connecticut Medical Examining Board,* 223 Conn. 618, 631, 613 A.2d 739 (1992); *Jutkowitz* v. *Department of Health Services,* supra, 95–96. In this case, because the plaintiff did not avail himself of the opportunity to subpoena Selig for further testimony or to move the board to strike Selig's testimony on direct, we are similarly persuaded that he was not substantially prejudiced.

Accordingly, we reverse the trial court's holding that the board's limitation of the plaintiff's cross-examination of Selig was arbitrary, an abuse of discretion, and violative of a substantial fundamental right of the plaintiff. This disposition of the defendants' appeal in their favor on the merits makes it unnecessary for us to resolve the defendants' further disagreement with the trial court's remand order.

II

The plaintiff's cross appeal challenges the validity of the administrative proceedings against him on a number of grounds that can best be analyzed as raising issues of evidentiary sufficiency, constitutional fairness and compliance with the applicable provisions of the UAPA. We agree with the trial court's conclusion that the plaintiff has failed to demonstrate a lack of substantial evidence to support the sanctions imposed upon him and that he has similarly failed to establish that

the proceedings deprived him of his constitutional right to due process. We conclude, however, that the record is insufficient to resolve the plaintiff's further claims that the administrative proceedings failed to comply with the procedural mandates of the UAPA and that the trial court therefore should have granted his request to supplement the record in this regard.

## A

The plaintiff has raised two claims concerning the sufficiency of the evidence before the board to sustain its finding that he had violated § 20-13c. He challenges the trial court's conclusions that: (1) the board properly relied on its own expertise in assessing the charges against him; and (2) the board had before it substantial evidence to support its findings. We agree with the trial court.

## 1

The plaintiff argues that the trial court improperly failed to honor his due process rights and diminished the quantum of evidence required to sustain the suspension of his license because the board members were permitted to act as their own experts in technical matters without specifying their credentials or the authority on which their conclusions were based.[12] The

---

[12] The trial court did not squarely address this issue in its memorandum of decision, although review of the plaintiff's briefs to the trial court reflects that this challenge was made before that court. In its memorandum of decision on the defendant's motion for protective order, however, the trial court wrote: "In evaluating the evidence, the Board members were entitled to employ whatever experience, technical competence and specialized knowledge that they possessed. General Statutes § 4-178 (Rev. to 1987). That statute is general and essentially permissive in nature. There is nothing in the law, however, which requires that any Board member be trained in the particular branch or area of psychotherapy practiced by the plaintiff in order to decide the case. See General Statutes § 20-8a concerning the composition of the Board."

plaintiff asserts that the board thereby reached unsubstantiated conclusions regarding the appropriate standard of care, contrary to the expert authority he had presented to the panel. We disagree.

General Statutes (Rev. to 1985) § 4-178 authorizes an agency to evaluate evidence in light of its "experience, technical competence, and specialized knowledge . . . ."[13] In a similar case before a medical examining board consisting entirely of physicians, we stated that "the [persons] composing the board were themselves qualified to decide whether certain conduct of a physician or surgeon so derogated from professional standards as unreasonably to jeopardize the interests of the public; and upon that basis they were so entitled to act. . . . With the facts of [the professional's] conduct before it, the board was competent to determine [whether the conduct had been compatible with professional standards] without hearing expert opinion evidence." *Jaffe* v. *Department of Health,* 135 Conn. 339, 349, 64 A.2d 330 (1949); see also *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care,* 226 Conn. 105, 149, 627 A.2d 1257 (1993). Nevertheless, a person charged with professional misconduct "has the right to offer expert opinions at the hearing before the board; [the board] is bound to admit such evidence; and [the board] would be obliged to consider it in arriving at its conclusions." *Jaffe* v. *Department of Health,* supra, 350.

We cannot say that the board in this case failed to provide adequate notice of reliance on its own exper-

[13] General Statutes (Rev. to 1985) § 4-178 provides in relevant part that "notice may be taken of generally recognized technical or scientific facts within the agency's specialized knowledge. Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material noticed, including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed. The agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence."

tise. Here, the proposal for decision set forth the findings of fact upon which the recommended decision was based, the conclusions the board intended to draw from these findings of fact, and the specific statutory provisions deemed to have been violated thereby. The plaintiff was thereby afforded ample opportunity to rebut the proposed findings. See *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care,* supra, 150.

The trial court correctly noted that the standard of professional care applied by the board in this case was based on the board's interpretation of General Statutes § 20-13c (4) and (5). "Judicial review of the conclusions of law reached administratively is . . . limited. . . . [It] is the well established practice of [a reviewing] court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . ." (Citations omitted; internal quotation marks omitted.) *Griffin Hospital* v. *Commission on Hospitals & Health Care,* supra, 496. The trial court correctly held that the board had not abused its discretion with regard to the standard of professional care employed in its determination of this case. It was not improper for the board to utilize its own expertise in reaching its conclusions regarding the plaintiff's professional conduct.

2

The plaintiff also claims that the trial court improperly concluded that there was substantial evidence in the record to support the board's findings and conclusions. The trial court correctly limited the scope of its inquiry to that authorized by General Statutes (Rev. to 1985) § 4-183 (g) of the UAPA. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings

of basic fact and whether the conclusions drawn from those facts are reasonable . . . . The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) *Adriani* v. *Commission on Human Rights & Opportunities,* 220 Conn. 307, 314–15, 596 A.2d 426 (1991). "In determining whether an administrative finding is supported by 'substantial evidence,' the reviewing court must defer to the agency's assessment of the credibility of witnesses." *Miko* v. *Commission on Human Rights & Opportunities,* 220 Conn. 192, 200, 596 A.2d 396 (1991); *Briggs* v. *State Employees Retirement Commission,* 210 Conn. 214, 217, 554 A.2d 292 (1989). "The reviewing court must take into account contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Citations omitted; internal quotation marks omitted.) *Samperi* v. *Inland Wetlands Agency,* 226 Conn. 579, 588, 628 A.2d 1286 (1993).

With regard to the charges of sexual conduct, four witnesses, all of whom were former patients of the plaintiff, testified before the panel that sexual contact had taken place between themselves and the plaintiff, and testified to the details thereof. The board specifically found these witnesses to be credible, and rejected the plaintiff's testimony on these claims as incredible. A reviewing court "must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to believe or disbelieve the evidence presented . . . in whole or in part." *Briggs* v. *State Employees Retirement Commission,* supra. We conclude that there was substantial evidence in the record to support the board's findings and conclusions on these charges.

As to the charge regarding the sexological examination, the relevant patient testified before the panel to the details of physical contact that had taken place between herself and the plaintiff over the course of approximately two years, although she denied that the contact had occurred in the context of a "sexological examination." The plaintiff testified to the contrary, stating that his physical contact with this patient was part of a sexological examination he had conducted, and he described certain circumstances surrounding that examination. The board had evidence before it concerning the appropriate professional guidelines for such examinations. We conclude on this record that substantial evidence exists to support the board's conclusions that the contact with this patient was either inappropriate sexual conduct or a sexological examination performed in a manner and under conditions inappropriate for the patient.

As to the claims of misprescribing of medication and the failure to monitor a patient's medication, the record supports the board's findings that the plaintiff had prescribed Parnate, a mono amine oxidose inhibitor, over a two year period to a patient who had continuing alcohol abuse problems and suicidal ideation. There was expert testimony concerning the close monitoring that was required under these potentially dangerous, even lethal, circumstances. The record supports the finding that this patient was hospitalized after she combined her prescription medication with alcohol, and that subsequently the plaintiff prescribed lithium for her. An expert testified to the need for close monitoring of a patient who combined lithium and alcohol. The patient also testified to the informal manner in which prescriptions had been issued or renewed and the monitoring involved with that practice. The board was entitled to credit her testimony. Although the plaintiff argues that he had contact with the patient through telephone con-

versations, group therapy and other informal contacts, it was within the province of the board to assess the adequacy of his prescribing and monitoring practices in light of the circumstances presented by this patient. The board could rely on its own expertise in this regard. See *Jaffe* v. *Department of Health*, supra, 349. We conclude that there was substantial evidence to support the board's conclusions that the plaintiff had violated General Statutes § 20-13c (4) and (5) in regard to this charge.

Finally, with regard to the mishandling of the transference phenomena with four patients, the record supports the board's finding that all four patients were in a state of positive transference to him. The plaintiff did not dispute that finding; rather, he claims that the board could not have concluded that his management of the transference under the behavioral school of therapy was inappropriate. Yet the board had substantive evidence before it regarding the multiple forms of behavioral therapy and how these differed from psychodynamic forms of therapy in their management of transference. Evidence in the record also exists to support the fact that the plaintiff had sexual and nonsexual physical contact with four patients, and that he gave to and received token gifts from them. The board was entitled to rely on its own expertise in concluding that a failure to maintain boundaries and to act strictly as a therapist, such as occurred in this case, would be improper, under any therapeutic approach, and in violation of § 20-13c (4). See id.

We cannot conclude on the basis of this record that the trial court's determination that substantial evidence existed to support the board's findings and conclusions was improper.

B

The plaintiff has raised numerous claims in support of his assertion that the trial court improperly rejected

his contention that the board's procedures in hearing and adjudicating his case violated his constitutional rights to due process. Emphasizing the complexity of his case, he maintains that his constitutional rights were impaired because: (1) the panel members who heard the case missed meetings; (2) the board members were permitted to vote without having attended the hearing or having read the record; (3) the length and discontinuity of the hearing process caused the plaintiff irreparable injury; (4) he was improperly precluded from conducting discovery; and (5) the same attorney providing neutral legal advice to the board on matters of procedure represented the board and the department on appeal.

We have repeatedly held that "[t]he procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause"; *Adamchek* v. *Board of Education,* supra, 369; *Pet* v. *Department of Health Services,* supra, 356–57; *Taylor* v. *Robinson,* 171 Conn. 691, 698, 372 A.2d 102 (1976); and specifically have held that § 4-179 as previously codified passes constitutional muster. *Local 1303 & Local 1378* v. *Freedom of Information Commission,* 191 Conn. 173, 180, 463 A.2d 613 (1983). We decline to revisit this issue today.

In light of these holdings, we agree with the trial court that the plaintiff has failed to establish his claims of constitutional deprivation.

1

We turn first to the plaintiff's complaint regarding the failure of the panel members who drafted the "Proposed Final Decision" to attend the evidentiary hearing in its entirety. General Statutes (Rev. to 1985) § 4-179 provides in relevant part that, "[w]hen in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision . . . shall not be made

until a proposal for decision is served upon the parties
. . . . The proposal for decision shall contain a state-
ment of the reasons therefor and of each issue of fact
or law necessary to the proposed decision, *prepared by
the person who conducted the hearing or one who has
read the record. . . .''* (Emphasis added.) This provi-
sion establishes adequate procedural safeguards, in
addition to those that may be established by the board,
to protect the plaintiff's due process rights. *Pet* v.
*Department of Health Services,* supra, 362. When, as
in this case, the administrative decision makers have
not themselves "heard the case or read the record,"[14]
§ 4-179 permits the drafting of a proposal for decision
by a person who has either conducted the hearing, and
so heard *all* of the evidence, *or* who has read the rec-
ord in its entirety.

In this case, in the absence of full acquaintance with
the record on the part of a majority of the administra-
tive decision makers,[15] the board designated a panel
of four persons as hearing officers to conduct the
evidentiary hearing, all of whom are purported to have
voted on the proposed final decision.[16] As a constitu-
tional matter, if each panel member met the minimum
criteria of § 4-179, i.e., if each had heard all of the evi-
dence or read the entire record, the plaintiff's due pro-
cess rights were adequately protected.

---

[14] See footnote 1 for the complete text of General Statutes (Rev. to 1985)
§ 4-179.

[15] Shirley Williams, a physician, was the only member of the board that
rendered the final decision who had heard any evidence in this case.
Although the record is silent as to whether other board members in fact
had read the record, the board's attempt to follow the mandates of Gen-
eral Statutes § 4-179 suggests strongly that this procedure was adopted
in light of the absence of a majority of board members who had themselves
read the record as a whole.

[16] The defendants admitted in their response to the plaintiff's complaint
that "[i]t is purported that each of the Panel members voted on the Pro-
posal for Decision."

2

We next turn to the plaintiff's claim that the trial court improperly concluded that his right to due process had not been violated, even though six of the seven board members who voted on the final decision had not attended the hearings or read the record. The plaintiff specifically asserts that *none* of the board members was sufficiently familiar with the record to render a final decision.

The express assumption of § 4-179 is that a board may render a final decision even when no board member has heard the evidence or read the record, provided that the board complies with the designated UAPA procedural safeguards.[17] When hearing officers have been designated, under § 4-179, the responsibility of a board member rendering a final decision is distinct from that of a hearing officer drafting a proposed final decision. In regard to administrative proceedings, we have held that "where hearings are required by statute, a [board] member need not be present in order to participate in decisions [i]f that member acquaints himself sufficiently with the issues raised and the evidence and arguments presented at the public hearing in order to exercise an informed judgment. *Loh* v. *Town Plan & Zoning Commission,* 161 Conn. 32, 42, 282 A.2d 894 [1971]." (Internal quotation marks omitted.) *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 724, 345 A.2d 563 (1974). The UAPA procedures generally requiring a public hearing in contested cases, and § 4-179 in particular,[18] are patently sufficient to safeguard basic due process rights. See *Pet* v. *Department of Health Services,* supra.

---

[17] See footnote 1.

[18] See footnote 1.

3

The plaintiff next claims that his right to due process was violated because the length and discontinuity of the hearing process caused him irreparable injury. The trial court denied this due process claim, noting that "the most significant interruptions in the hearing schedule were caused by the plaintiff himself. In particular, his unsuccessful action for injunctive relief consumed nearly one and one-half years." We cannot disagree with the trial court's conclusions. See *Pet* v. *Department of Health Services,* supra, 362–66 (denial of a continuous hearing does not per se constitute a denial of due process).

It is fatal to the plaintiff's claim of a due process violation that he failed to utilize the statutory remedies that were available to him to compel a prompt agency decision. See, e.g., General Statutes (Rev. to 1985) § 4-180 (b).[19] A litigant who forgoes an available remedy to cure a defect may be found to have waived the right to object thereto. *Jutkowitz* v. *Department of Health Services,* supra, 95; see also *Finkenstein* v. *Administrator,* 192 Conn. 104, 114, 470 A.2d 1196 (1984) (this court "will not set aside an agency's determination upon a ground not theretofore fairly presented for its consideration"). This claim is without merit.

---

[19] General Statutes (Rev. to 1985) § 4-180 provides in relevant part: "(a) Each agency shall proceed with reasonable dispatch to conclude any matter pending before it . . .

"(b) If any agency fails to comply with the provisions of subsection (a) of this section in any contested case, any party thereto or any interested person may apply to the superior court for the judicial district of Hartford-New Britain for an order requiring the agency to render a decision forthwith, after hearing. . . ."

### 4

The plaintiff next claims that the trial court improperly held that his right to due process had not been violated because he was precluded from conducting prehearing discovery. We disagree with this claim as well.

"It is well-settled that parties to judicial or quasi-judicial proceedings are not entitled to pre-trial discovery as a matter of constitutional right." (Internal quotation marks omitted.) *Pet* v. *Department of Health Services,* supra, 356. "Pretrial discovery may be expressly authorized by statute, but, absent an express provision, the extent to which a party to an administrative proceeding is entitled to discovery is determined by the rules of the particular agency." Id., 357.

The plaintiff has failed to identify any statutory or regulatory right to prehearing discovery that he was denied. The plaintiff has further failed to establish that he was "denied due notice of the hearing, the right to produce relevant evidence, the right to cross-examine witnesses produced by his adversary, [or] the right to be fairly apprised of the facts upon which the agency [acted]" by virtue of a denial of prehearing discovery. Id., 360–61. The trial court correctly concluded that "the record in this case does not support the plaintiff's contention that he was unable to obtain the information he sought."

### 5

The defendant further claims that he was denied due process because the same attorney who had provided supposedly neutral legal advice to the board on matters of procedure had represented the board and the department on an interlocutory appeal and continues to represent the board in this appeal. The plaintiff has

cited no authority in support of this claim, nor offered any argument or evidence as to how he was prejudiced by this alleged dual role. See *Commission on Special Revenue* v. *Freedom of Information Commission,* 174 Conn. 308, 321–22, 387 A.2d 533 (1978). This issue is, therefore, not sufficiently briefed to warrant further review. See Practice Book § 4065; *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.,* 218 Conn. 297, 300, 589 A.2d 337 (1991); *Gaynor* v. *Union Trust Co.,* 216 Conn. 458, 482, 582 A.2d 190 (1990); *Isaac* v. *Mount Sinai Hospital,* 210 Conn. 721, 732, 557 A.2d 116 (1989); *State* v. *Person,* 20 Conn. App. 115, 130, 564 A.2d 626 (1989), aff'd, 215 Conn. 653, 577 A.2d 1036 (1990), cert. denied, 498 U.S. 1048, 111 S. Ct. 756, 112 L. Ed. 2d 776 (1991).

## C

Although the plaintiff's constitutional arguments lack merit, he also raised a number of issues concerning alleged procedural deviations from the statutory mandates governing the administrative proceedings in his case.[20] He maintains that the record does not substantiate full compliance with the requirements of § 4-179 and renews the request that he made in the trial court to be afforded the opportunity to supplement the record in order to document the absence of such compliance.

The plaintiff's claims of statutory noncompliance are that, contrary to § 4-179: (1) the board improperly

[20] Contrary to the defendants' assertion that compliance with the UAPA is not at issue in this appeal, the plaintiff, in his brief on cross appeal, specifically argues that, "[s]uch a procedural safeguard [as General Statutes § 4-179] relied on by the Court to protect my constitutional [right to] due process *was greatly abused and not followed* to safeguard my constitutional right." (Emphasis added.) The plaintiff raised the issue of noncompliance with the UAPA directly in his supplemental brief to the Superior Court, and the trial court's decision in this matter was based, in part, on its conclusion that the board had complied with the provisions of the UAPA.

deferred to the department's attorney; (2) the board impermissibly imposed a penalty greater than that recommended by the panel; (3) the board failed to maintain a proper record by denying his request to make a transcript of the board's meetings when oral presentation, discussion, and the final vote were taken; (4) the members of the hearing panel neither attended all the hearings nor read the record in its entirety; (5) the board failed to familiarize itself properly with the evidence and the plaintiff's brief in opposition to the proposal for decision; and (6) the board lost critical records.

1

We may dispose of the plaintiff's first three claims of procedural irregularities in summary fashion. As the trial court correctly concluded, none is supported by the record.

The plaintiff's first issue is effectively a claim of bias. "It is presumed that members of administrative boards acting in an adjudicative capacity are unbiased." *Jutkowitz* v. *Department of Health Services,* supra, 100. The party claiming bias bears the burden of proving a disqualifying interest. Id. We cannot conclude, upon a review of the record, that the trial court was incorrect in holding that the plaintiff had presented no evidence to meet this burden.

The plaintiff's second claim is that the board abused its discretion by imposing a five year suspension, with conditions, in contrast to the three year recommendation made by the panel. Section 20-13c authorizes the board to revoke the plaintiff's license permanently. "If the penalty meted out is within the limits prescribed by law, the matter lies within the exercise of the [agency's] discretion and cannot be successfully challenged unless the discretion has been abused." *Gibson* v. *Connecticut Medical Examining Board,* 141 Conn. 218, 230, 104 A.2d 890 (1954). Sentencing is an inher-

ently fact bound inquiry. In an administrative appeal, a reviewing "court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported, as the statute requires, by substantial evidence." *Persico* v. *Maher*, 191 Conn. 384, 409, 465 A.2d 308 (1983). The record supports the trial court's conclusion that the board did not abuse its discretion in suspending him for five years.

The plaintiff's third claim is that the board failed to maintain a proper record by denying his request to make a transcript of the board's meetings when oral presentation, discussion, and the final vote were taken. In a contested case, an agency is required to transcribe all oral proceedings if so requested by a party, at that party's expense. General Statutes (Rev. to 1985) § 4-177 (f).[21] We conclude that, in this case, the board improperly denied the plaintiff's request to transcribe the relevant board meetings, since they were "oral proceedings" as contemplated by § 4-177 (f). We cannot conclude, however, that the plaintiff was prejudiced by this procedural error, since he was permitted to have tape recordings of the board meetings made by a professional reporting service at his own expense. The plaintiff argues that the board improperly denied his request to include these recordings as part of the record in his case, but fails to cite authority in support of this claim. To the contrary, General Statutes (Rev. to 1985) § 4-177 (e),[22] which delineates the scope of a rec-

---

[21] General Statutes (Rev. to 1985) § 4-177 (f) provides: "Oral proceedings or any part thereof shall be transcribed on request of any party. The requesting party shall pay accordingly, the cost of such transcript or part thereof."

[22] General Statutes (Rev. to 1985) § 4-177 (e) provides: "The record in a contested case shall include: (1) All pleadings, motions and intermediate rulings; (2) evidence received or considered; (3) questions and offers of proof, objections and rulings thereon; (4) any decision, opinion or report by the officer presiding at the hearing."

ord in a contested case, contains no express authority for inclusion of posthearing transcripts. We note, further, that General Statutes (Rev. to 1985) § 4-183 (f) allows for supplementation of the record by the trial court if alleged administrative procedural irregularities are not reflected therein. These provisions adequately protected the plaintiff's right to appeal the board's decision in this case. The trial court correctly concluded that the plaintiff had not met his burden with respect to this claim.

2

The plaintiff's remaining claims of procedural irregularity stand on a different footing. We agree with the plaintiff that, with regard to these issues, the requisite procedural facts are sufficiently unclear so that the trial court improperly denied his motion to supplement the agency record.

General Statutes (Rev. to 1985) § 4-183 (f) provides in relevant part that an administrative appeal "shall be confined to the record [but that i]n cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. . . ." " 'An appeal from an administrative tribunal should ordinarily be determined upon the record of that tribunal, and only when that record fails to present the hearing in a manner sufficient for the determination of the merits of the appeal, or when some extraordinary reason requires it, should the court hear the evidence.' Tarasovic v. Zoning Commission, 147 Conn. 65, 69, 157 A.2d 103 (1959); Levinson v. Board of Chiropractic Examiners, 211 Conn. 508, 530, 560 A.2d 403 (1989). The determination of whether the trial court improperly denied the plaintiff's motion to supplement the record is made on the basis of the abuse of discretion standard. Leib v. Board of Examiners for

*Nursing,* 177 Conn. 78, 93, 411 A.2d 42 (1979)." *Adriani* v. *Commission on Human Rights & Opportunities,* supra, 325–26.

The plaintiff has renewed in this court the argument that he made to the trial court that the panel members in their entirety had not attended the hearing or read the record, that the board members were not sufficiently familiar with the record to render a final decision, and that the board lost critical evidence. These contentions are not frivolous.

In support of these claims, the plaintiff had moved the trial court to supplement the record with tape recordings of posthearing board meetings made at his expense by a professional agency. The trial court denied this motion. At the trial court hearing, the plaintiff again sought to supplement the record with his own testimony and that of his wife. He argued that comments made during the course of the board meetings at which his matter was presented were necessary to prove that procedural irregularities had occurred. The plaintiff contended that this testimony would establish procedural errors in that: (1) the plaintiff had not been given a proper opportunity to be heard; (2) the board had solicited a response from only one side; (3) the board members lacked familiarity with the record; and (4) the board members had not read the record or documents submitted to the board by the plaintiff pursuant to § 4-179. The plaintiff also argued that in order to protect his rights on appeal he should have the benefit of an adequate record, including tapes from the board meetings. The trial court denied this motion to supplement the record on the grounds that: (1) the plaintiff had an adequate opportunity to present these arguments either in his petition for reconsideration of the board's final decision or in his argument to that court; and (2) in particular, § 4-179 did "not require that the

members of the agency who render the final decision be present at the hearings or even have read the record . . . ."

The trial court's first rationale was premised on the record's adequacy for appellate review.[23] "When, however, the trial court applies the substantial evidence test in reviewing [an agency's] decision . . . as it did in this case, it is inappropriate to refuse extrinsic evidence of alleged procedural irregularities on the ground that the existing record is adequate to conduct the review. The substantial evidence test assumes that an agency's decision is not tainted by procedural irregularities that implicate the validity of the decision itself." *Adriani* v. *Commission on Human Rights & Opportunities,* supra, 327. The rationale of *Adriani* applies to all procedural irregularities, including an agency's failure to comply with statutory procedural mandates in reaching its decision.

The trial court's second rationale improperly assumed that the board had complied with § 4-179. We have stated that the protective function of § 4-179 was served if each panel member met that statute's minimum requirements: to have heard all of the evidence or to have read the entire record before preparing a proposal for decision. Because the record indicates that none of the panel members attended the hearing in its entirety,[24] the only question that remains is whether the four panel members read the record. The minutes of the March 19, 1991 meeting of the board state that

---

[23] The plaintiff's arguments on this claim appear to have been obscured by other arguments that sound in sufficiency of the evidence. This obfuscation was exacerbated because, having been denied the right to admit a transcript of the board meetings or additional testimony, the plaintiff was forced to prove the occurrence of procedural irregularities indirectly by comparing the factual findings and conclusions made by the board to the record.

[24] See footnote 8.

three of the four panel members actively participated in the drafting of the proposal for decision, and that *one* of those three had read the record in its entirety as of that board meeting. The record is insufficient, however, to determine whether the other three panel members had also read the record in its entirety as required by § 4-179.

The plaintiff asserts that the board lacked sufficient familiarity with the record to render a final decision. He argued before the trial court that at least one board member had remarked during a board meeting that he had not read the plaintiff's brief in opposition to the proposal for decision, and that other members were unfamiliar with the evidence. The plaintiff also contends that the board lost critical records.[25] The record before us does not reveal whether the importance and timing of the loss of the records impacted on the board's ability to be fully informed of the issues before it, or whether the board was sufficiently familiar with the record of this case to make an informed judgment in compliance with § 4-179. The trial court, therefore, *lacked any basis for determining whether* the board had complied with the mandates of the UAPA.

It is well established that "a license to practice medicine is a recognized property right and may only be revoked under procedures that comport with constitutional due process of law. *Bell* v. *Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971)." *Pet* v. *Department of Health Services,* supra, 353–54. "[W]hen the government seeks to deprive a person of life, liberty or property, [due process requires] that the thoroughness of the procedure by which the deprivation is effected must be balanced against the gravity

---

[25] Although properly raised below, the trial court did not directly reach this issue in its memorandum of decision. The claim, however, is effectively another assertion that the board was insufficiently informed to render a final decision in this matter, and we treat it as such.

of the potential loss and the interests at stake, and
. . . that the procedure involved must be appropriate
to the nature of the case. See *Mullane* v. *Central
Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.
Ct. 652, 94 L. Ed. 865 [1949]; *Anderson National Bank*
v. *Luckett,* 321 U.S. 233, 246, 64 S. Ct. 599, 88 L. Ed.
692 [1944]." (Internal quotation marks omitted.) *Leib*
v. *Board of Examiners for Nursing,* supra, 83; see also
*Concerned Citizens of Sterling, Inc.* v. *Connecticut Sit-
ing Council,* 215 Conn. 474, 484, 576 A.2d 510 (1990).
Because the UAPA is designed and intended to safe-
guard minimal due process rights; see *Pet* v. *Depart-
ment of Health Services,* supra, 356–57; strict
compliance with its mandate is necessary to ensure that
significant property rights are not unlawfully
destroyed.

We note that General Statutes § 20-8a, concerning
the composition and procedures of the medical examin-
ing board, has been revised since the commencement
of the hearing in this case to codify more rigorous pro-
cedural protections designed to ensure fairness in its
administrative proceedings.[26] Additionally, a recent

---

[26] General Statutes § 20-8a, as now codified, provides in relevant part:
"(f) The board shall refer all statements of charges filed with the board
by the department pursuant to section 20-13e to a medical hearing panel
within sixty days of the receipt of charges. The panel shall consist of three
members of the board, at least one of whom shall be a public member. The
panel shall conduct a hearing in accordance with the provisions of chapter
54 and the regulations established by the commissioner of health services
concerning contested cases, except that the panel shall file a proposed final
decision with the board within one hundred twenty days of the receipt of
the issuance of the notice of hearing by the board. The time period for fil-
ing such proposed final decision with the board may be extended for good
cause by the board in a duly recorded vote.
"(g) The board shall *review* the panel's proposed final decision in accord-
ance with the provisions of section 4-179, and adopt, modify or remand said
decision for further review or for the taking of additional evidence. The
board shall act on the proposed final decision within ninety days of the fil-

amendment to § 4-179 eliminates the authority of a hearing officer who has not conducted a hearing to draft a proposed final decision.[27] In light of the enhanced legislative concern for fairness in administrative proceedings that is evidenced by these recent codifications, we view the specific allegations of procedural irregularity in this case as particularly grave.

Consequently, because of the potentially crucial impact of the plaintiff's claims of procedural irregularities on the propriety of the board's decision, we conclude that the trial court abused its discretion in denying the plaintiff the opportunity to present evidence that would supplement the agency record. Because the alleged procedural irregularities are not apparent on the face of the record, we remand this matter to allow supplementation of the record, including a consideration of the admissibility of the tape record-

ing such proposed final decision with the board may be extended for good cause by the board in a duly recorded vote.

"(g) The board shall *review* the panel's proposed final decision in accordance with the provisions of section 4-179, and adopt, modify or remand said decision for further review or for the taking of additional evidence. The board shall act on the proposed final decision within ninety days of the filing of said decision by the panel. This time period may be extended by the board for good cause in a duly recorded vote.

"(h) Except in a case in which a license has been summarily suspended . . . *all three panel members shall be present to hear any evidence and vote on a proposed final decision.* The chairperson of the medical examining board may exempt a member from a meeting of the panel if the chairperson finds that good cause exists for such an exemption. Such an exemption may be granted orally but shall be reduced to writing and included as part of the record of the panel within two business days of the granting of the exemption or the opening of the record and shall state the reason for the exemption. *Such exemption shall be granted to a member no more than once during any contested case and shall not be granted for a meeting at which the panel is acting on a proposed final decision on a statement of charges. . . .*" (Emphasis added.)

[27] General Statutes § 4-179 (c) currently provides: "Except when authorized by law to render a final decision for an agency, a hearing officer shall, *after hearing a matter,* make a proposed final decision." (Emphasis added.)

ings and necessary testimonial evidence in order to determine whether there has been full compliance with § 4-179.

The judgment is set aside and the case is remanded to the trial court to allow supplementation of the record and for further proceedings in accordance with this opinion.

In this opinion CALLAHAN, KATZ and PALMER, Js., concurred.

BERDON, J., dissenting. This eight year odyssey does not speak well for our administrative process, especially because it involves a physician who is accused of serious professional misconduct and negligence. Nevertheless, I agree with the trial court that a new hearing is required because the constitutional right of the plaintiff, Dr. Donald Pet, to due process of law was violated in two respects. First, I believe that Dr. Pet's due process rights were violated when Dr. Harvey Mandell, the chairperson of the panel that conducted the administrative hearings, placed a time limitation on Dr. Pet's right to cross-examine the state's only expert witness, Dr. Kenneth Selig.[1] Second, I believe that Dr. Pet's rights were violated by the fact that only one of the members of the defendant Connecticut medical examining board (board) was present for part of the hearing and the other six members did not hear any of the testimony. I believe this violated due process, especially because four of the most serious charges against Dr. Pet were wholly dependent on the personal credibility of the complaining witnesses.

---

[1] The plaintiff, Dr. Pet, appeared pro se—that is, he represented himself—during the relevant portions of the administrative hearing and before this court.

I

In *Pet* v. *Department of Health Services,* 207 Conn. 346, 353–54, 542 A.2d 672 (1988) *(Pet I),*[2] the court noted "that a license to practice medicine is a recognized property right and may only be revoked under procedures that comport with constitutional due process of law." The Uniform Administrative Procedure Act,[3] which governs license suspension proceedings before the board, provides that "a party may conduct cross-examinations required for a full and true disclosure . . . ." General Statutes (Rev. to 1985) § 4-178 (3), now codified at § 4-178 (5). We have recognized that "[t]he right of cross-examination is not a privilege but is an absolute right . . . ." *Gordon* v. *Indusco Management Corp.,* 164 Conn. 262, 271, 320 A.2d 811 (1973). Indeed, the denial of the right to cross-examination implicates the due process rights of a party. See *Pet I,* supra, 366; *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 574, 409 A.2d 1020 (1979); *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 207, 355 A.2d 21 (1974); *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 569, 345 A.2d 520 (1973); *Welch* v. *Zoning Board of Appeals,* 158 Conn. 208, 212–13, 257 A.2d 795 (1969).

---

[2] In *Pet* v. *Department of Health Services,* 207 Conn. 346, 542 A.2d 672 (1988), this court reversed the trial court's granting of a temporary injunction to the plaintiff, Dr. Donald Pet. After two hearings before the defendant Connecticut medical examining board, Dr. Pet had instituted an action in the Superior Court seeking injunctive relief. The trial court granted the requested relief in part, ordering that the defendant board: (1) accord Dr. Pet the right of prehearing discovery; (2) strike the complaining witness' testimony if she continued to invoke her attorney-client privilege during cross-examination; (3) complete the necessary hearings within a two month period; and (4) ensure that any board member who was to participate in a vote had either heard the case in its entirety or read the entire record. This court reversed the judgment and ordered that the trial court dismiss the action for lack of jurisdiction because Dr. Pet had failed to exhaust his administrative remedies.

[3] General Statutes § 4-166 et seq.

I agree with the trial court's conclusion that the record discloses that in imposing the one hour time limitation upon the cross-examination of Selig, Mandell intended to punish Dr. Pet.[4] While Mandell had the

---

[4] Dr. Pet's cross-examination became repetitive and the following colloquy occurred: "Dr. Pet: Would you accept, Dr. Selig, that there are professionals in the field who—

"[Panel] Chairman Mandell: Don't ask him if he thinks there are differences of opinion among professionals in the field. We know that. . . .

"Dr. Pet: I'm trying to establish what I think is a very critical point and I'm also trying to understand the issue. I think this is the one expert witness that the health department presents, and I—

"Chairman Mandell: We're going to take a ten minute break and you formulate a specific question of this witness and it cannot be on the differences of opinion amongst psychiatrists and are there alternate forms of therapy. Even Mr. Harris grasped that by now. All right. We are adjourned for ten minutes. . . . I am instructed by higher ups in the attorney general's office that we do not have to allow unlimited time for cross-examining of any witness. If we're getting into irrelevancies and repetition, [then] I have the authority as chairman of the panel to cut off cross-examination and with that in mind, I'm going to say now that this witness is going to be excused at 12:15 today. Also, I'd like from you now who you, a list of your next witnesses and when they're going to be available for your examination.

"[Assistant Attorney General Andrea] Gaines: Just for the record, I would note that it's ten after eleven giving Dr. Pet a little over an hour for cross-examination.

"Chairman Mandell: I've just explained that this witness is going to be excused at 12:15. Period. And, then I'm going to ask for now a list of Dr. Pet's next witnesses and when they're going to be available.

"Dr. Pet: Dr. Mandell, I would like to take exception to the ruling that you're making.

"Chairman Mandell: I've just made it. Period.

"Dr. Pet: I'd like to make—

"Chairman Mandell: No. You've become repetitious. You got into irrelevancies. You're wasting our time. Your delaying tactics are untenable.

"Dr. Pet: I'd like to establish on the record why it is that I think—

"Chairman Mandell: You've done that over and over again. Now, please, I want a list of your next witnesses. I'm told I don't have to allow you unlimited time. Now, who are your next witnesses and when are they going to be available?

"Dr. Pet: I was planning to be the next witness.

"Chairman Mandell: At what time will that witness be here?

"Dr. Pet: Well, I, I have questions to ask of Dr. Selig—

"Chairman Mandell: What time? Why cannot you answer my question? What time is your next witness going to be here?

right and duty to curtail repetitious or irrelevant cross-examination; see General Statutes § 4-178 (1) ("the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence"); punishing Dr. Pet by imposing a time limitation on his cross-examination was beyond the scope of Mandell's authority. See 1 C. McCormick, Evidence (4th Ed. 1992) § 19, p. 81 ("[t]he judge . . . has wide discretionary control over the *extent* of cross-examination upon particular topics, but the denial of cross-examinations altogether, or *its arbitrary curtailment* upon a proper subject of cross-examination will be ground for reversal" [emphasis altered]). Indeed, we

---

"Dr. Pet: I would—

"Chairman Mandell: And, what is her name or his name?

"Dr. Pet: I would prefer to presume that I would be the next witness and that would be the next meeting following this meeting.

"Chairman Mandell: Then, we will adjourn here at 12:15 today, then, and you, you are not bringing in any other witnesses besides yourself?

"Dr. Pet: Yes. I do plan on having additional—

"Chairman Mandell: Well, let me have their names right now, please.

"Dr. Pet: I don't have all of their names right now.

"Chairman Mandell: This is really contemptuous of this panel.

"Dr. Pet: I'd like to be able to respond to the issues that you made.

"Chairman Mandell: No. This contempt for this panel has gone on far enough. You will not furnish us the names of your next witnesses?

"Dr. Pet: No. I didn't say, I will not. It's just that—

"Chairman Mandell: And, when will you be available to be the witness? At one o'clock this afternoon?

"Dr. Pet: The next meeting that we have. I would prefer to be available.

"Chairman Mandell: All right. Let's resume questioning and Dr. Selig is to be excused at 12:15. And, there will be no further testimony by Dr. Selig.

"Dr. Pet: Dr. Mandell, I do believe that I'm entitled to raise my objection. To time limits. I, I do have other areas to explore with Dr. Selig.

"Chairman Mandell: Then you better get started.

"Dr. Pet: He is the only expert witness.

"Chairman Mandell: Then, you'd better get started. I'm told that I do not have to give you limitless time and you're using up your valuable time right now.

"Dr. Pet: I will not have time to complete the questions that I have to ask of Dr. Selig and I would just like to establish that for the record."

have long held that "[a] fair and full cross-examination of a witness upon the subjects of his examination in chief is the absolute right, and not the mere privilege, of the party against whom he is called, and a denial of this right is a prejudicial and fatal error." (Internal quotation marks omitted.) *Fahey* v. *Clark,* 125 Conn. 44, 47, 3 A.2d 313 (1938). To "absolutely stop" a party's cross-examination is to deny that party the right to cross-examine. Id., 48.

We have held in an analogous situation that placing a time limitation on the examination of prospective jurors is improper, even though the "trial court is vested with wide discretion in conducting the examination of jurors." (Internal quotation marks omitted.) *State* v. *Anthony,* 172 Conn. 172, 174, 374 A.2d 156 (1976); see *State* v. *Roberson,* 173 Conn. 102, 376 A.2d 1087 (1977). In *State* v. *Anthony,* supra, the trial court had summoned a panel of fourteen venirepersons, placed them in the jury box, and informed the defendant that she would have one hour to voir dire everyone on the panel. This same procedure was followed with a second panel of venirepersons. When a third panel was necessary to complete the jury, the trial court limited the defendant's voir dire to forty-five minutes. Id., 173. This court held that the trial court's imposition of the time limitation was arbitrary and prejudicial, and therefore required reversal. Id., 177.

I believe that Mandell's imposition of the time limitation on Dr. Pet's cross-examination was an arbitrary denial of due process. The majority concedes that the time limitation was "inappropriate,"[5] but nevertheless

---

[5] Even the attorney representing the interests of the state, Judith Lederer, objected to the time limitation placed upon Dr. Pet. Her objection was preceded by a colloquy between Dr. Pet and Mandell during the cross-examination of Selig in which the time limitation was emphasized: "Dr. Pet: I'm going to ask for a few minute break because I'm, very candidly,

holds that it was not "unlawful." This holding is based on the conclusion that, even if the limitation had deprived Dr. Pet of due process, he had not demonstrated "substantial prejudice." I disagree with the majority.

First, I believe that the time limitation deprived Dr. Pet of his right to a full and complete cross-examination. Mandell terminated the cross-examination right at the point when Selig conceded that he was not an expert in those therapies that do not emphasize the transference phenomenon or that deal with it in a different way than the psychodynamic therapies.[6] This

---

I'm a little bit at a loss because the train of cross-examination that I had in mind has been interrupted.

"Chairman Mandell: Use your time as you like.

"Dr. Pet: Take a five minute break. (A recess was taken.)

"Chairman Mandell: This recess which was requested by Dr. Pet and permitted by the panel is over. Ms. Lederer can hardly restrain herself from saying something. Dr. Pet, would you, we'll give you the extra time that Ms. Lederer seems to be insisting on.

"[Attorney] Lederer: Thank you. I would just like the record to reflect that my expert is available for the entire day. This was based not only on conversations we had in preparation, but also based on representations made at the last hearing. He has blocked out his schedule. He was anticipating returning this afternoon. As such, the department would like to go on record as opposing the board's decision to close off Dr. Pet's cross-examination of this witness at a specified time. I would urge the panel to reconsider its ruling, allow the witness to return after a lunch break and allow Dr. Pet to proceed with questions that are within an appropriate scope of cross-examination. Thank you.

"Chairman Mandell: Thank you for those thoughts. We've been told by the assistant attorney general that we do not have to permit irrelevancies, repetition and we do not have to put up with contempt of this panel. This hearing, the witness will be excused at 12:15. The record will also show that Dr. Pet was scheduled to be the next witness and at his request, his appearance will be postponed to the next hearing date. Please, proceed, Dr. Pet."

[6] The following exchange occurred during Dr. Pet's cross-examination of Selig: "Q. Now, Dr. Selig, some of the, would you agree that the area of practice that I specialize in, the behavioral therapies, that you are not an expert in those areas?

area of testimony was critical in regard to the four counts that charged Dr. Pet with mismanaging "transference" and thereby violating General Statutes § 20-13c (4).[7] In addition, Dr. Pet was completely prohibited from cross-examining Selig after his redirect testimony, which concerned possible interest and bias. Selig testified on redirect that his primary motivation for testifying for the state was that he was a "good citizen." Indeed, after this testimony, Mandell stated that the panel would assume that Selig had provided his testimony "as a public service." Dr. Pet was denied an opportunity to challenge this assumption.

Second, it is clear that Dr. Pet was also prejudiced by the time limitation because Selig was the only expert witness called by the state in support of the charges of professional misconduct. Although the members of the board may rely upon their own expertise; *Jaffe* v. *Department of Health*, 135 Conn. 339, 349–50, 64 A.2d 330 (1949); "expert testimony may be required when the question involved goes beyond the ordinary knowl-

---

"A. If I answer that question, I'm not an expert, do I have to agree that that's what you specialize in?

"Q. Not at all. Not whatsoever.

"A. I would agree that I'm not an expert in behavioral therapy.

"Q. Now, if my area of work is in those therapies that don't emphasize the transference phenomenon or deal with it in a different way than the psychodynamic individuals because as you indicated a number of people may recognize it but deal with it entirely different. Do you feel that you would be qualified as an expert to testify on those matters?

"Ms. Lederer: I would object. I think that's asking the witness to draw a legal conclusion.

"Chairman Mandell: Yes. I agree. I don't see any reason to question Dr. Selig of his opinions of what makes an expert witness. He was brought here by the state. Anyway, the time allotted for the end of the cross-examination has come. . . ."

[7] In its final decision, the board defined "transference" as the process in psychotherapy whereby a close relationship with a therapist calls forth repressed feelings from earlier in the patient's life related to people from earlier in that patient's life. It went on to say that "[o]ften, these strong feelings are 'transferred' to the therapist."

edge and experience of the trier of fact." (Internal quotation marks omitted.) *Feinson* v. *Conservation Commission,* 180 Conn. 421, 428, 429 A.2d 910 (1980). The trial court specifically found that the board had based its decision, at least in part, upon Selig's testimony.[8] Furthermore, "[i]f an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience . . . ." Id. In its memorandum of decision, the trial court found that the board had "pointed to no evidence in the record concerning the agency members' expertise in the precise subject matter of the charges brought against" Dr. Pet. Therefore, we must presume that the board relied solely upon Selig's expertise.

Even if Dr. Pet had not demonstrated actual prejudice, I believe that the time limitation would have to be presumed to be prejudicial for the same reason that it was in *State* v. *Anthony,* supra. In that case, this court noted that "because of the arbitrary time limitations

---

[8] The trial court found the following, with which I agree: "In the present case, a majority of the panel and of the Board were physicians, and, therefore, the Board was entitled to rely on the expertise of those members with respect to questions concerning the plaintiff's [Dr. Pet's] professional conduct. . . . On the other hand, the defendants have pointed to no evidence in the record concerning the agency members' expertise in the precise subject matter of the charges brought against the plaintiff. In their Motion for Protective Order and in the Board's objection to the plaintiff's interrogatories, both filed in connection with discovery requests of the plaintiff during this appeal, the defendants vigorously and successfully opposed the plaintiff's attempt to inquire into the members' particular expertise in the subject matter of the charges. The court infers, however, that the Department considered expert testimony on this subject matter to be important evidence, since it was the Department which produced the witness. Furthermore, the Board specifically referred to Dr. Selig's testimony as support for its finding that the plaintiff was negligent in monitoring a patient's use of medication. This, in turn, was one of the bases for the suspension of the plaintiff's license. For all of these reasons, the court concludes that the Department considered Dr. Selig to be a highly significant witness in its case against the plaintiff and that the Board based its decision, in part, on his testimony." (Citation omitted.)

set for the voir dire examination, it is impossible for the defendant to show that he could have discovered facts or prejudices on the part of individual veniremen which would have justified challenges for cause." Id., 177. We therefore presumed that the time limitation was prejudicial in the absence of proof to the contrary. Similarly, in the present case, it is impossible for Dr. Pet to show that further cross-examination would have revealed interest, bias or prejudice,[9] or demonstrated that the alleged expert was not so expert. Therefore, prejudice should be presumed.

The majority now adopts a new standard in order to predicate error on a wrongful limitation of cross-examination. It holds that Dr. Pet, who was pro se, should have either subpoenaed Selig, or moved to have Selig's testimony stricken, in an effort to remedy the inappropriate time limitation. We have never before held a party to this standard, and the majority cites no authority to support this harmless error analysis. Furthermore, it is inconsistent with Chief Justice Peters' conclusion in *Fellin* v. *Administrator,* 196 Conn. 440, 446, 493 A.2d 174 (1985), that "the leniency traditionally afforded to inexperienced pro se parties may justify belated consideration of claims not fully explored in earlier proceedings." (Internal quotation marks omitted.) While the majority purports to rely on *Dragan* v. *Connecticut Medical Examining Board,* 223 Conn. 618, 630, 613 A.2d 739 (1992), this case is inapposite. In *Dragan,* the defendant did not "assert his right to undertake . . . [the] cross-examination." Rather, "more than one year after the hearings had begun, the plaintiff reserved only the right to submit

---

[9] "Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." (Internal quotation marks omitted.) *State* v. *Colton,* 227 Conn. 231, 249, 630 A.2d 577 (1993); *State* v. *Santiago,* 224 Conn. 325, 331, 618 A.2d 32 (1992); *State* v. *Lubesky,* 195 Conn. 475, 482, 488 A.2d 1239 (1985).

additional *exhibits* for the board's consideration."
(Emphasis in original.) Id. Clearly, in this case, Dr. Pet
made his objection known as indicated in the testimony
quoted in footnote 4.

I fear that in grappling with the complexities of this
case the majority has lost sight of the fundamental
importance of cross-examination in adversary proceed-
ings. " 'Cross-examination is the principal means by
which the believability of a witness and the truth of his
testimony are tested.' *Davis* v. *Alaska,* 415 U.S. 308,
316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v.
*Brigandi,* 186 Conn. 521, 533, 442 A.2d 927 (1982); see
*State* v. *Luzzi,* 147 Conn. 40, 47, 156 A.2d 505 (1959)."
*State* v. *Ouellette,* 190 Conn. 84, 101, 459 A.2d 1005
(1983). Indeed, years ago, this court stated that "[t]he
test of cross-examination is the highest and most indis-
pensable test known to the law for the discovery of
truth." *Bishop* v. *Copp,* 96 Conn. 571, 575, 114 A. 682
(1921). "In almost every setting where important deci-
sions turn on questions of fact, due process requires
an opportunity to confront and cross-examine adverse
witnesses. . . . [F]airness can rarely be obtained by
. . . one-sided determination[s] of facts decisive of
rights. . . . [And no] better instrument has been
devised for arriving at truth than to give a person in
jeopardy of serious loss . . . the right to contest the
facts upon which the judgment depends; next to this
right, the significance of any argument for . . . expe-
diency or efficiency pales." (Citations omitted; inter-
nal quotation marks omitted.) *Society for Savings* v.
*Chestnut Estates, Inc.,* supra, 574.

## II

I am also troubled by the majority's conclusion that
Dr. Pet was not denied due process, even though only
one of the seven members of the board who voted par-
ticipated in the evidentiary hearing, and even this mem-

ber, Dr. Shirley Williams, was not present throughout the entirety of the hearing. Four of the charges at issue in the hearings alleged that Dr. Pet had sexual relations with four female patients while he was providing psychiatric care to them. The board found that Dr. Pet had had varying degrees of sexual contact with the four women. For example, the board specifically found that he had had "both oral sex and sexual intercourse" with one of the female patients.

The resolution of these charges, which were denied by Dr. Pet and supported solely by the testimony of the four female patients, depended entirely on credibility. The board's written decision emphasized this by stating that "the Board accepts as credible the testimony of these four patients and not that of Dr. Pet."

Credibility must be assessed, as any trial judge will attest, not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. *State* v. *Henning,* 220 Conn. 417, 420, 599 A.2d 1065 (1991). An appellate court must defer to the trier of fact's assessment of credibility because "[i]t is the [factfinder] . . . which had an opportunity to observe the demeanor of the witnesses and the parties; thus it is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *In re Juvenile Appeal (82-AB),* 188 Conn. 557, 561, 452 A.2d 113 (1982). As a practical matter, it is inappropriate to assess credibility without having watched a witness testify, because demeanor, conduct and other factors are "not fully reflected in the cold, printed record." *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982).

As Justice Cardozo recognized in *Smith* v. *New York,* 214 N.Y. 140, 144, 108 N.E. 214 (1915), the principle that credibility must be judged firsthand applies equally to administrative and judicial proceedings: "The Board

is not in the strict sense a court . . . but its functions are judicial, and the requirement that witnesses shall be seen and heard by the judicial officer who is to weigh their testimony has been proved by experience to be a means so important for the ascertainment of truth as to entitle us to assume that it will not be lightly abandoned." (Citation omitted.) Similarly, in holding that a member of the Philadelphia city council would "be disqualified from voting on any of the charges [against a local official] that is supported by . . . evidence introduced when he was not present"; *Marshall Impeachment Case,* 363 Pa. 326, 343, 69 A.2d 619 (1949); the Supreme Court of Pennsylvania stressed the importance of observing testimony firsthand: "Not only what witnesses say but their manner and demeanor while testifying are important factors in passing on their credibility. The determination of whether or not a witness is worthy of belief depends upon the impression he makes when answering questions put to him on direct and cross-examination. It is possible, if not probable, that there will be conflicts or contradictions in the testimony, and the acceptance of the testimony of one witness and the rejection of the testimony of another witness necessitate that most careful attention be given each witness from the moment he is sworn or affirmed until his testimony is concluded." Id., 342.

Evidently, the majority perceives no need to distinguish the present case from the typical, technical administrative appeal in which the personal credibility of the witnesses is either unchallenged or is a very minor issue. Other courts have made such a distinction. See, e.g., *Prince George's County* v. *Zayre Corp.,* 70 Md. App. 392, 521 A.2d 779 (1987) (in cases where credibility is an important issue, only members of the panel who hear the testimony may participate in the deliberations; allowing a decision to be based on the written record where credibility is important may vio-

late due process); *Stevens Chevrolet, Inc.* v. *Commission on Human Rights,* 498 A.2d 546 (D.C. App. 1985), and cases cited therein (where agency decision depends on the credibility of witnesses, any findings made by one who has not personally heard the testimony is necessarily arbitrary).

While *Pet I,* supra, 361–62, generally approved of many aspects of the administrative process currently under review, this court did not have before it at that time the absenteeism from hearings and changes in the membership of the board that characterize the current appeal. I do not believe that the *Pet I* court could have even envisioned the "revolving door" adjudication that followed it. The other authorities relied upon by the majority for the proposition that a board member need not attend the evidentiary hearing in order to participate in the final decision—*New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 724, 345 A.2d 563 (1974), and *Loh* v. *Town Plan & Zoning Commission,* 161 Conn. 32, 42, 282 A.2d 894 (1971)—are inapposite. The *New Haven* case concerned an appeal from a decision by the public utilities commission approving two utility companies' applications to construct overhead electrical transmission lines. *New Haven* v. *Public Utilities Commission,* supra, 689–90. Only one of the commission members who participated in the decision had not attended the hearing. Id., 724. Similarly, in *Loh,* which concerned a planning commission's granting of an application for a zone change, only one voting member of the commission had failed to attend the hearing. *Loh* v. *Town Plan & Zoning Commission,* supra, 40. These cases are clearly distinguishable from the present appeal in two important respects: (1) in light of the subject matter, personal credibility was not an issue at those administrative hearings; and (2) only one member of the administrative body was not present to hear the evidence.

We have long held that "hearings must be conducted so as not to violate the fundamental rules of natural justice." *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 249, 470 A.2d 1214 (1984). The due process clause of the fourteenth amendment requires "an opportunity . . . granted at a meaningful time and in a meaningful manner . . . for [a] hearing *appropriate to the nature of the case . . . .*" (Citation omitted; emphasis altered; internal quotation marks omitted.) *Boddie* v. *Connecticut,* 401 U.S. 371, 378, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971); accord *Schwartz* v. *Town Plan & Zoning Commission,* 168 Conn. 20, 24, 357 A.2d 495 (1975). When a person is deprived of a significant property right, i.e., a license to practice medicine, following administrative proceedings at which a time limitation was placed on that person's cross-examination, and only one of the seven decision makers actually heard any of the testimony, that person is deprived of fundamental fairness and due process of law. Accordingly, I would affirm the judgment of the trial court on the cross-examination issue, reverse on the "revolving door" issue, and remand the case to the board for a new hearing.

I respectfully dissent.