ELINOR HALPERN *v.* BOARD OF EDUCATION OF THE CITY OF BRISTOL
(14975)

PETERS, C. J., and CALLAHAN, NORCOTT, KATZ and PALMER, Js.

Argued September 21—decision released November 8, 1994

*Jon L. Schoenhorn,* with whom, on the brief, was *Christine M. Fiedler,* for the appellant (plaintiff).

*Thomas N. Sullivan,* for the appellee (defendant).

*William J. Dolan* filed a brief for the Connecticut Education Association as amicus curiae.

PETERS, C. J. The dispositive issue in this administrative appeal is the scope of our mandate "for further proceedings consistent with [our] opinion" in *Lee* v. *Board of Education,* 181 Conn. 69, 84, 434 A.2d 333 (1980). Since 1974, the plaintiff, Elinor Halpern, formerly Elinor Lee, has challenged the termination of her contract as a tenured teacher by the defendant board of education of the city of Bristol (board).[1] In *Lee,* we held that the board had properly conducted a termination hearing in accordance with the statutory requirements of the Teacher Tenure Act; General Statutes § 10-151; but had violated the constitutional requirements of procedural due process by failing to provide the plaintiff with "a written statement of the decision reached, the reasons for the determination, and a fair summary of the evidence relied upon." Id., 79.

Pursuant to our remand, the board convened in November, 1980, to consider the transcript and the exhibits introduced at the 1974 termination hearing. On the basis of that documentary review, the board reaffirmed its decision to terminate the plaintiff's employment and issued findings and conclusions in support of its determination. The plaintiff appealed that decision to the trial court, which rendered a judgment in favor of the board. The plaintiff then appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

---

[1] The inordinate delays in the adjudication of this case reflect credit on no one. The record demonstrates that the board acted promptly in response to our remand. Thereafter, the plaintiff sought simultaneously to pursue an action for a declaratory judgment and a writ of mandamus as an alternative to her administrative appeal. That alternative remedy was not conclusively determined to be unavailable to the plaintiff until this court's decision in *Halpern* v. *Board of Education,* 196 Conn. 647, 495 A.2d 264 (1985). Review of the plaintiff's administrative appeal was then apparently delayed by an inability to locate the administrative record for a significant period of time.

The gravamen of the plaintiff's present appeal is that the members of the board that reconsidered her termination in 1980, could not validly conduct the "further proceedings" ordered by this court because none of them had been a member of the board at the time of the original termination proceedings in 1974. The plaintiff maintains that the actions of the newly constituted board in making its determination on the prior record, without conducting an entirely new hearing, violated: (1) her statutory rights; (2) her constitutional rights; and (3) the mandate of our remand order.[2] Although we disagree that a new hearing is required, we agree that the special circumstances of this case warrant a more expansive interpretation of our mandate than it received from the board or from the trial court.

Well established principles govern further proceedings after a remand by this court. "In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted *in light of the opinion.* . . . This is the guiding principle that the trial court must observe. . . . Compliance means that the direction is not deviated from. The trial court cannot adjudicate rights and duties not within the scope of the remand. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed. The trial court should examine the mandate and *the opinion of the reviewing court and proceed in conformity with the views expressed therein.* . . ." (Citations omitted; emphasis in original;

---

[2] The plaintiff has not challenged the conclusion of the trial court that the evidence adduced at her termination hearing was sufficient to support the findings of the board.

internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven,* 207 Conn. 308, 312, 541 A.2d 858 (1988); *Wendland* v. *Ridgefield Construction Services, Inc.,* 190 Conn. 791, 794–95, 462 A.2d 1043 (1983); *State* v. *Avcollie,* 188 Conn. 626, 643, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); *Nowell* v. *Nowell,* 163 Conn. 116, 121, 302 A.2d 260 (1972).

Applying these principles to the circumstances of this case, we are persuaded that the plaintiff cannot prevail on her claim that she is entitled, as a matter of statutory right, to a new termination hearing. In our prior decision, we concluded that the plaintiff's statutory rights had not been violated. *Lee* v. *Board of Education,* supra, 181 Conn. 76–77. Accordingly, our mandate for further proceedings did not direct a new hearing under the statute. Indeed, a contrary mandate would have required reconciliation with our holding in *Gervasi* v. *Town Plan & Zoning Commission,* 184 Conn. 450, 452–53, 440 A.2d 163 (1981), that we do not have unlimited authority to order new administrative hearings.

The terms of our mandate necessarily reflected, however, our conclusion that the plaintiff had established a violation of her constitutional rights by reason of the board's failure to adopt a statement of the grounds for her termination and the evidence supporting that termination. The conclusion that the board's 1974 actions had infringed the plaintiff's constitutional rights cannot now be relitigated. The only question that remains is what procedural vehicle we contemplated by our mandate for further proceedings to vindicate those rights. As far as the present record shows, although our judgment was rendered six years subsequent to the plaintiff's termination hearing, the parties never sought clarification of the terms of our mandate. The board and the trial court were required, therefore, to construe

our mandate for vindication of the plaintiff's constitutional rights in light of the actual circumstances at the time the remand was to be implemented. "We have rejected efforts to construe our remand orders so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand. *Blaker* v. *Planning & Zoning Commission,* 219 Conn. 139, 592 A.2d 155 (1991). So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." *Cioffoletti* v. *Planning & Zoning Commission,* 220 Conn. 362, 369, 599 A.2d 9 (1991).

The relevant circumstances in this case necessarily include the fact that, in 1980, the members of the board who were charged with implementing our remand order included no one who had participated in the 1974 hearings concerning the plaintiff's termination. We are confident that the board members attempted to discharge their responsibilities in a conscientious manner and that they read with care the documentation that was available to them. Nonetheless, we are persuaded that the procedure employed by the board deprived the plaintiff of any meaningful ability to participate in the board's remediation of her constitutional rights.[3] That was not the intent of our mandate. Further proceedings are therefore required.

---

[3] Because our focus is on a remand subsequent to a determination that the plaintiff's constitutional rights had been violated, we need not decide whether, as the board suggests, contested administrative cases constitutionally can be adjudicated, ab initio, by agency members who have not had the opportunity personally to observe the witnesses, in the absence of procedures equivalent to those mandated in this opinion. Therefore, we do not decide what precedential value to assign the cases from other jurisdictions cited by the board. See, e.g., *Utica Mutual Ins. Co.* v. *Vincent,* 375 F.2d 129, 131–34 (2d Cir. 1967); *Lewandoski* v. *Vermont State Colleges,* 142 Vt. 446, 451–53, 457 A.2d 1384 (1983).

To eliminate any ambiguity in our present order of remand, we direct the trial court to set aside its judgment and to remand the case to the board to determine whether there are grounds for the plaintiff's termination and to specify the evidence that supports its determination. In order to provide the plaintiff with a voice in these proceedings, we direct the board to adopt, by analogy, the procedure specified by the Uniform Administrative Procedure Act in General Statutes § 4-179.[4] That section requires, in somewhat comparable circumstances, the preparation of a "proposed final decision," and affords to interested parties the opportunity to comment on that proposal by filing exceptions and presenting briefs and oral argument to the officials who are to render the decision. We have held that the opportunity to respond to a "proposed final decision" is a constitutionally adequate safeguard of the due process rights of the parties whose interests are being adjudicated in a contested case. *Pet* v. *Dept. of*

---

[4] General Statutes § 4-179 provides: "AGENCY PROCEEDINGS. PROPOSED FINAL DECISION. (a) When, in an agency proceeding, a majority of the members of the agency who are to render the final decision have not heard the matter or read the record, the decision, if adverse to a party, shall not be rendered until a proposed final decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the members of the agency who are to render the final decision.

"(b) A proposed final decision made under this section shall be in writing and contain a statement of the reasons for the decision and a finding of facts and conclusion of law on each issue of fact or law necessary to the decision.

"(c) Except when authorized by law to render a final decision for an agency, a hearing officer shall, after hearing a matter, make a proposed final decision.

"(d) The parties and the agency conducting the proceeding, by written stipulation, may waive compliance with this section."

We direct the board to adopt this procedure in the special circumstances of this case by analogy only, as we recognize that the Uniform Administrative Procedure Act defines the term "agency" to exclude "town or regional boards of education." General Statutes § 4-166 (1); see *Neyland* v. *Board of Education,* 195 Conn. 174, 177–78 and n.5, 487 A.2d 181 (1985).

*Health Services,* 228 Conn. 651, 672, 638 A.2d 6 (1994). The board is therefore directed in this case to prepare such a "proposed final decision," and thereafter to afford the plaintiff and other interested parties the opportunity for appropriate responses thereto, including the right to file exceptions and to present briefs and oral argument to the board. After due consideration of these responses, the board is then authorized to adopt a final decision including the requisite findings concerning the propriety of the termination of the plaintiff's tenure as a teacher in 1974.

The judgment of the trial court is reversed and the case is remanded to that court with direction to remand the case to the board for further proceedings in accordance with the mandate contained in the immediately preceding paragraph.

In this opinion the other justices concurred.