ELINOR HALPERN *v.* BOARD OF EDUCATION
OF THE CITY OF BRISTOL*

Superior Court            Judicial District of        File No. CV950551453
Hartford-New Britain at Hartford

Memorandum filed October 29, 1996

*Jon L. Schoenhorn & Associates*, for the plaintiff.

* Affirmed. *Halpern* v. *Board of Education*, 243 Conn. 435, 703 A.2d 1144 (1997).

*Shipman & Goodwin,* for the defendant.

MCWEENY, J. This action is an appeal of the decision by the board of education of the city of Bristol (board) terminating the employment of a tenured public school teacher. The appeal is brought pursuant to General Statutes (Rev. to 1995) § 10-151 (f).[1] The board initially voted to terminate the employment of the plaintiff, Elinor Halpern, previously known as Elinor Lee, on August 30, 1974. The board's termination decision was preceded by a General Statutes (Rev. to 1972) § 10-151 (b) termination hearing. The August 30, 1974 termination decision was appealed to the Court of Common Pleas which dismissed the plaintiff's appeal. On June 3, 1980, our Supreme Court reversed the lower court's decision and remanded the case with direction to return it to the board for further proceedings consistent with the Supreme Court's opinion. *Lee* v. *Board of Education,* 181 Conn. 69, 84, 434 A.2d 333 (1980). Such remand to the board was ordered by the Superior Court, the successor to the Court of Common Pleas.

Acting on the remand, on November 22, 1980, the board issued "findings and conclusion" based on the record of the 1974 § 10-151 (b) termination hearing. This decision of the board also was to terminate the tenured continuing teaching contract of the plaintiff.

The plaintiff appealed the November 12, 1980 decision to the Superior Court (Docket No. CV810253483) pursuant to General Statutes (Rev. to 1979) § 10-151 (f). The Superior Court dismissed the plaintiff's appeal.

The plaintiff appealed the Superior Court decision to the Appellate Court. The appeal was transferred to the

[1] Subsection (f) of § 10-151 was amended and transferred to subsection (e) effective July 1, 1995. Public Acts 1995, No. 95-58, § 2. All references in this opinion to § 10-151 (f) are to the General Statutes as revised to 1995 unless otherwise indicated.

Supreme Court pursuant to the rules of appellate practice.

Our Supreme Court reversed the Superior Court's dismissal of the plaintiff's appeal. On November 8, 1994, the Supreme Court again directed that the case be returned to the board for further proceedings in accordance with the Supreme Court's more explicit instruction. *Halpern* v. *Board of Education*, 231 Conn. 308, 315, 649 A.2d 534 (1994). The Superior Court for the judicial district of Hartford-New Britain rendered judgment and remanded the case to the board on January 3, 1995.

Following this remand judgment, the board and the plaintiff took the following actions. On January 4, 1995, a letter was sent from the board's attorney to the board's superintendent outlining distribution of the transcript and exhibits from the plaintiff's 1974 hearing to current board members. Copies of the letter went to each board member outlining their obligation to review the materials from the 1974 hearing.

On January 5, 1995, a letter was sent from the board's attorney to the plaintiff's attorney outlining a procedure intended to comport with the Supreme Court mandate.

There is no record of a response by the plaintiff or by her attorney to the January 5, 1995 letter, other than in the minutes of the January 25, 1995 meeting indicating that the plaintiff, through counsel, had requested that the January 25 meeting be a public proceeding.

On January 13, 1995, the board disseminated notice of a special board meeting to address a personnel matter involving the plaintiff on January 25, 1995.

The board met on January 25, 1995, at a special meeting in public session. Attending the meeting were nine

members of the board, the board's attorney, the plaintiff, the plaintiff's attorney and the board's director of personnel. The minutes describe in pertinent part the purpose of the meeting. "Attorney Clemow explained that while the purpose of the meeting was to discuss the termination of employment of a former teacher in the Bristol Public Schools, the discussion would be held in public session at the request of [the plaintiff], as conveyed through her attorney, John L. Schoenhorn. Attorney Clemow also stated that Attorney Schoenhorn had requested that the draft findings contemplated by the Connecticut Supreme Court decision be distributed to his client at the same time they are distributed to all of the members of the Board, so that he is permitted to comment or respond to them before the full Board votes on them. Accordingly, Attorney Clemow suggested that the draft findings be prepared by a single member of the Board, in consultation with counsel, then distributed to [the plaintiff] and the Board. After [the plaintiff] has an opportunity for input as contemplated by the Supreme Court, the full Board can then discuss and amend or adopt the draft findings as their final decision."

The minutes also reflect the members of the board confirming that they had read the transcript and exhibits of the plaintiff's 1974 termination proceeding. Several members of the board expressed dissatisfaction with the state of the record, but were instructed by their attorney that they must limit their consideration to the 1974 record. A general discussion of the merits of the case ensued, until the members of the board had reached a conclusion. The unanimous conclusion was that valid grounds existed for the termination of the plaintiff's employment.

The board chairperson agreed to write up proposed findings and a conclusion with the assistance of the

board's attorney. The draft proposed findings and conclusion would be circulated to the board members and to the plaintiff at the same time. A further board meeting would then be scheduled to allow the plaintiff to respond and for the board to consider amending or adopting the draft findings and conclusion as the board's decision.

The board's attorney transmitted the draft findings and conclusion to the plaintiff's counsel on February 24, 1995. The plaintiff was also afforded, until March 17, 1995, to submit "[a]ny written argument [she] wished to present." A special meeting of the board was proposed for the week of March 27, 1995, to allow for the plaintiff's oral argument and for action by the board.

On March 23, 1995, the board's attorney notified the plaintiff's attorney by facsimile of a March 28, 1995 special meeting of the board on the plaintiff's case. The letter noted the absence of a written brief by the plaintiff but welcomed oral argument at the meeting.

On March 28, 1995, the plaintiff, through her attorney, requested orally and in writing a rescheduling of the board meeting concerning the plaintiff's case.

On April 28, 1995, the board disseminated a formal notice of a May 8, 1995, 7 p.m. meeting to address a personnel matter involving the plaintiff.

The board met in public session on May 8, 1995. All nine members of the board who participated in the January 25, 1995 meeting were present. Also in attendance were the board's attorney, the plaintiff, the plaintiff's attorney, the board's personnel director and members of the press.

The meeting was not recorded, but the record contains detailed minutes. The minutes were conceded to be accurate by the plaintiff's attorney at oral argument and in the plaintiff's brief.

The meeting was not called to order until 7:15 p.m., following an approximately fifteen minute delay, at the plaintiff's request. The delay was for the purpose of allowing the plaintiff additional time to consult with her attorney.

The plaintiff's attorney objected to the absence of a stenographer or a recording device. The claim was made pursuant to the Teacher Tenure Act, General Statutes § 10-151 et seq. The board's attorney, after disputing the nature of the tenure act requirement, indicated that the plaintiff was free to tape-record the meeting, and pointed out her opportunity to have submitted a written brief. Following a colloquy by counsel relating to the role of the current board, the plaintiff commenced her presentation.

The plaintiff initially got into a dispute with the board over access to records and was advised that the board would not consider additional evidence. The plaintiff also sought to inquire of each board member his or her reasons for supporting the proposed finding and conclusion. The chairperson of the board denied this request and directed the plaintiff to make her argument.

The plaintiff proceeded with a detailed presentation, responding to the proposed findings and conclusion. The meeting was recessed between 8:50 p.m. and 9:05 p.m. When the meeting was reconvened, the chairperson of the board indicated that in the absence of any agreement on a reasonable time limit, the meeting would end at 10 p.m. The plaintiff's attorney objected and argued that the plaintiff should be given as long as she wished, with additional meeting dates if necessary.

The plaintiff continued her detailed presentation until interrupted by the board chairperson at 10 p.m. The plaintiff asked for a short time to finish her point and this was permitted. The plaintiff's request for an additional hour to finish her entire presentation was denied.

The chairperson of the board inquired if any member of the board wished to comment about the proposed findings and conclusion or to address any points raised by the plaintiff. No board member responded.

A board member proposed the adoption of the proposed findings and conclusion. The board then voted unanimously to adopt the proposed findings and conclusion and to terminate the plaintiff's employment. The board meeting was then adjourned at 10:15 p.m.

It is from this vote that the plaintiff has appealed pursuant to § 10-151 (f).

In her brief, the plaintiff claims that the board's May 8, 1995 decision violates her constitutional rights to due process of law, her rights under § 10-151, and the mandate of the Connecticut Supreme Court. The violations alleged were allegedly occasioned by the absence of a verbatim record of the May 8, 1995 meeting, the restrictions on her presentation at such meeting and the failure of the record to support the "Findings and Conclusion."

The plaintiff's brief also claims that the board's termination decision was arbitrary, capricious, illegal, biased, an abuse of discretion and made in bad faith. The other issues raised in the appeal but not briefed are viewed as abandoned. *Collins* v. *Goldberg*, 28 Conn. App. 733, 738, 611 A.2d 938 (1992).

In evaluating the plaintiff's claims, this court must review the decisions of our Supreme Court, which directly address the present case, in order to evaluate what the board was obligated to do after the most recent remand.

In its first review in 1980, the Supreme Court addressed two claims of the plaintiff. One claim about the validity of the board's August 30, 1974 meeting was rejected. Thus, the court decided the case on one issue:

"On appeal, the plaintiff claims that the trial court erred . . . (1) in concluding that the board's failure to state the reasons for its decision or the evidence upon which it relied did not deprive the plaintiff of due process of law . . . ." *Lee* v. *Board of Education*, supra, 181 Conn. 71. The court further noted that "[t]he plaintiff does not challenge the sufficiency of the notice and hearing requirements of . . . § 10-151 (b). The record discloses that the plaintiff was afforded adequate notice of the charges made and that the hearing held pursuant to § 10-151 (b), at which the plaintiff was represented by counsel, presented evidence and cross-examined witnesses, complied with the constitutional safeguards. Her single claim in this regard is that the board's failure to state the reasons for its decision and the evidence upon which it relied deprived her of due process of law." Id., 76–77.

The Supreme Court in *Lee* then went on to hold: "Those decisions, and their underlying rationale, lead us to the conclusion that a tenured teacher discharged for cause under . . . § 10-151 (b) is entitled, as a matter of constitutional law, to a written statement of the decision reached, the reasons for the determination, and a fair summary of the evidence relied upon." Id., 79.

In language which is particularly instructive to this court, the *Lee* decision notes: "Our conclusion is also based upon General Statutes [Rev. to 1979] § 10-151 (f), which grants a teacher aggrieved by the board's decision the right to judicial review in the Superior Court. On appeal, the court must determine whether the appropriate procedure under the statute and the state and federal constitutions was employed . . . and whether the evidence relied upon was reliable and substantial and, if believed, sufficient to establish cause under the statute." (Citation omitted.) Id., 81.

In its decision in *Halpern* v. *Board of Education*, supra, 231 Conn. 310, the court determined that: "The

dispositive issue in this administrative appeal is the scope of our mandate 'for further proceedings consistent with [our] opinion' in *Lee* v. *Board of Education,* [supra, 181 Conn. 84]."

The issues and disposition in *Halpern* v. *Board of Education,* supra, 231 Conn. 311, are enunciated as follows: "The gravamen of the plaintiff's present appeal is that the members of the board that reconsidered her termination in 1980, could not validly conduct the 'further proceedings' ordered by this court because none of them had been a member of the board at the time of the original termination proceedings in 1974. The plaintiff maintains that the actions of the newly constituted board in making its determination on the prior record, without conducting an entirely new hearing, violated: (1) her statutory rights; (2) her constitutional rights; and (3) the mandate of our remand order. Although we disagree that a new hearing is required, we agree that the special circumstances of this case warrant a more expansive interpretation of our mandate than it received from the board or from the trial court."

The express mandate provides: "To eliminate any ambiguity in our present order of remand, we direct the trial court to set aside its judgment and to remand the case to the board to determine whether there are grounds for the plaintiff's termination and to specify the evidence that supports its determination. In order to provide the plaintiff with a voice in these proceedings, we direct the board to adopt, by analogy, the procedure specified by the Uniform Administrative Procedure Act in General Statutes § 4-179. That section requires, in somewhat comparable circumstances, the preparation of a 'proposed final decision' and affords to interested parties the opportunity to comment on that proposal by filing exceptions and presenting briefs and oral argument to the officials who are to render the decision. We have held that the opportunity to

respond to a 'proposed final decision' is a constitution-ally adequate safeguard of the due process rights of the parties whose interests are being adjudicated in a contested case. *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 672, 638 A.2d 6 (1994). The board is therefore directed in this case to prepare such a 'proposed final decision,' and thereafter to afford the plaintiff and other interested parties the opportunity for appropriate responses thereto, including the right to file exceptions and to present briefs and oral argument to the board. After due consideration of these responses, the board is then authorized to adopt a final decision including the requisite findings concerning the propriety of the termination of the plaintiff's tenure as a teacher in 1974." *Halpern* v. *Board of Education*, supra, 231 Conn. 314–15.

The court, having reviewed the history of the case and the Supreme Court mandate, will now review the plaintiff's claims.

The board argued that the plaintiff has waived her right to challenge the sufficiency of evidence supporting her termination. "The plaintiff has not challenged the conclusion of the trial court that the evidence adduced at her termination hearing was sufficient to support the findings of the board." Id., 311 n.2. Nevertheless, we are now addressing new "findings" and a new "conclusion." The findings and conclusion of record in *Halpern* were improperly reached in violation of the plaintiff's consti-tutional due process rights. Id., 313.

The Supreme Court made clear in *Lee* v. *Board of Education*, supra, 181 Conn. 81, that one of the specific reasons for requiring findings (a statement of reasons and evidence relied upon) was because under a General Statutes (Rev. to 1979) § 10-151 (f) appeal "the court must determine whether . . . the evidence relied upon was reliable and substantial and, if believed, sufficient

to establish cause under the statute." (Citations omitted.)

On May 8, 1996, the board, having independently reviewed the record of the 1974 termination hearing, adopted findings and a conclusion terminating the plaintiff's employment. The Teacher Tenure Act clearly affords the plaintiff the opportunity, however belatedly, to have a court review the merits of that decision. This appeal presents the first opportunity to review findings and a conclusion which were reached pursuant to a procedure which was not violative of the plaintiff's constitutional rights or the Supreme Court's mandate.

An analysis of the plaintiff's bias claim is also assisted by the court's consideration of the record upon which the board acted on the merits.

A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that she suffered "material prejudice as a result of this alleged procedural deficiency." *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 94, 596 A.2d 374 (1991).

Furthermore, "[j]udicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal

quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 219 Conn. 51, 57–58, 591 A.2d 1231 (1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." (Internal quotation marks omitted.) Id., 57. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." (Internal quotation marks omitted.) *Hospital of St. Raphael* v. *Commission on Hospitals & Health Care,* 182 Conn. 314, 318, 438 A.2d 103 (1980).

"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency]. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *Freedom of Information Commission,* 208 Conn. 442, 452, 545 A.2d 1064 (1988).

Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." *United Parcel Service,*

*Inc.* v. *Administrator, Unemployment Compensation Act*, 209 Conn. 381, 385–86, 551 A.2d 724 (1988).

Exhibit H of the record contains a detailed chronology of a major portion of the 1973–74 school year from September 10, 1973 through March 29, 1974. It includes: twenty-three days when the plaintiff was late for work; three incidents when the plaintiff, during the course of the school day, left her students unsupervised; two occasions when the plaintiff failed to pick up her students from special classes; eight instances of the plaintiff being either late or absent from assigned supervisory duties; and, five times when the plaintiff missed or was late for special classes. Exhibit H also documents ongoing disputes about the plaintiff's keeping first grade students after school, assigning excessive class work and homework, denying lunch and recess breaks to students and parental complaints about the plaintiff's performance.

At the hearing in 1974, the principal of the school where the plaintiff taught substantiated, on his personal knowledge, a clear majority of the events listed in exhibit H.

The plaintiff was repeatedly directed orally and in writing to follow specific directives relating to reporting to work on time, dismissing classes on time, not assigning mandated homework and not leaving her class unattended. Exhibit H and principal Kerr's testimony provided evidence of a failure to comply with these directives.

At the hearing, the plaintiff denied some, but not all, of the alleged deficiencies in her performance. The transcript of the hearing stated in pertinent part:

"Q. Mrs. Lee you have conceded, and we all accept the fact that you . . . just can't get to work on time, is that correct? Is that a fair statement?

"A. It is not an everyday occurrence, but during the course of the year I am late.

"Q. It is not like once or twice a month, it is more like once or twice a week?

"A. I would say once a week."

Also, at pages 164, 166 and 170 of the transcript, the plaintiff acknowledged her failing to meet her obligations and to refusing wilfully to follow directions.

The board's "Findings of Fact" are substantiated by reliable and probative evidence in the record.

The critical conclusions of the board are: "The Board concludes that Ms. Lee's chronic failure to report to work on time, as well as her repeated failure to perform supervisory duties as scheduled or get students to special classes as scheduled, continued with such frequency and over such a period of time as to constitute inefficiency or incompetence. The Board also concludes that Ms. Lee's failure to stop assigning homework to her first grade students, and especially her failure to heed administrative directives to dismiss children at 3:00 p.m., were sufficiently significant and serious to constitute insubordination."

The Teacher Tenure Act, § 10-151 et seq., sets forth the grounds upon which a tenured teacher's employment may be terminated. Section 10-151 (d) (1) specifically includes "inefficiency or incompetence," as a ground for termination.

The documented evidence of repeated and admitted tardiness, combined with a record of failure to cover assignments, suffice to substantiate a conclusion of inefficiency and/or incompetence. The plaintiff's repeated failure to arrive on time for supervisory duties, such as recess, presented safety problems. Her tardiness and forgetfulness with respect to special classes

disrupted the schedules of other teachers and deprived students of educational opportunities offered by the school. No matter how skilled a teacher may be, a continuous failure to report on time and to cover assignments constitute inefficiency and/or incompetence.

The board's conclusion as to insubordination is offered not under § 10-151 (d) (2), insubordination against reasonable rules of the board of education, but rather under § 10-151 (d) (6), other due and sufficient cause.

The board relies on *Tucker* v. *Board of Education*, 177 Conn. 572, 577, 418 A.2d 933 (1979), for the proposition that insubordination may constitute "other due and sufficient cause" for the termination of a tenured teacher.

The record reflects the plaintiff's repeated and wilful refusal to follow the directives of her administrative superiors. It is unquestionably insubordinate conduct. The pattern and continuation of such conduct also substantiate the conclusion that it was of a serious enough nature to justify a termination of the employment of a tenured teacher. "The board contends that insubordination in and of itself constitutes ' "other due and sufficient cause" ' for the termination of the plaintiff's contract and is a valid statutory basis for dismissal under the provisions of § 10-151 (b) (6). We agree with the board's contention." Id.

In her brief, the plaintiff challenges the proposed findings and conclusion as not meeting due process of law standards. The plaintiff claims that the proposed findings and conclusion were not specific enough for her to respond to.

In *Lee* v. *Board of Education*, supra, 181 Conn. 80, the Supreme Court noted that "[t]he statement of reasons and a fair summary of the evidence relied upon

need not reflect the polish of a judicial opinion. Reasoned and fair decision making, not technical finesse, is guaranteed by the due process standards of the state and federal constitutions."

The proposed findings and conclusion are five pages in length, contain thirteen specific findings and include a weighing and assessment of the evidence. The record also indicates that the plaintiff and her attorney were present on January 25, 1996, when the board discussed the evidence and considered a conclusion. The proposed findings and conclusion meet the constitutional due process requirements for administrative agencies.

The plaintiff's claims respecting her opportunity for input on the proposed findings and conclusion are essentially twofold. One aspect is the denial of the opportunity to present additional evidence and the other claim relates to the time limitation on oral argument.

The plaintiff was not entitled constitutionally, under § 10-151 or under the Supreme Court's mandate, to present further evidence in response to the proposed findings and conclusion. In the initial Supreme Court decision, it was determined that the plaintiff was given a constitutional and statutorily adequate hearing in 1974. "The record discloses that the plaintiff was afforded adequate notice of the charges made and that the hearing held pursuant to § 10-151 (b), at which the plaintiff was represented by counsel, presented evidence and cross-examined witnesses, complied with the constitutional safeguards." Id., 76. The sole defect was the board's failure to state the reasons for its decision and the evidence upon which it relied. Id., 76–77.

The remands in both the *Lee* and *Halpern* decisions clearly did not contemplate further evidentiary proceedings. *Halpern* expressly addressed this claim: "Applying these principles to the circumstances of this case, we

are persuaded that the plaintiff cannot prevail on her claim that she is entitled, as a matter of statutory right, to a new termination hearing. In our prior decision, we concluded that the plaintiff's statutory rights had not been violated. *Lee* v. *Board of Education*, supra, 181 Conn. 76–77. Accordingly, our mandate for further proceedings did not direct a new hearing under the statute." *Halpern* v. *Board of Education*, supra, 231 Conn. 312.

As previously noted, the Supreme Court's explicit mandate in this decision affords the plaintiff the opportunity to have "a voice in [the] proceedings" through a process that would allow her to "comment on that proposal by filing exceptions and presenting briefs and oral argument to the officials who are to render the decision." Id., 314.

The plaintiff did not have any right to examine the board members individually, to introduce additional evidence or to enter into discovery proposals.

The plaintiff was afforded a voice in the proceedings and was given ample opportunity to comment on the proposed findings and conclusion by written brief or oral argument. The plaintiff chose not to file written briefs and elected to argue herself rather than through her experienced attorney.

Due process requires fair proceedings, not perfect or exhaustive proceedings. *State* v. *Daugaard*, 231 Conn. 195, 218, 647 A.2d 342 (1994), cert. denied, 513 U.S. 1099, 115 S. Ct. 770, 130 L. Ed. 2d 666 (1995). To afford the plaintiff unlimited time to argue as her attorney originally proposed, is an absurd claim. To deny an additional hour of argument after hearing in excess of two hours of argument, is a reasonable action by the board. "An administrative hearing does not have to match the model of a trial in court. . . . It must, however, meet some modicum of orderly and fair procedure." (Citation omitted.) *Zanavich* v. *Board of*

*Education,* 8 Conn. App. 508, 512, 513 A.2d 196, cert. denied, 201 Conn. 809, 515 A.2d 381 (1986).

In analyzing the plaintiff's arguments, the court has considered the facts as represented in the record, not the factual misrepresentations contained in the plaintiff's brief. The plaintiff's "Preliminary Brief," dated November 17, 1995, asserts that: "The defendant board offered the plaintiff the options of submitting objections in writing or appearing at a hearing to present rebuttal. The plaintiff chose the latter." At oral argument, the plaintiff's counsel conceded that the plaintiff was free to comment both in writing and orally. The plaintiff asserts on page five of her brief that she was peremptorily cut off in her oral argument. In fact, after presenting over one hour of oral argument, she was afforded at least forty-five minutes to conclude her argument and afforded the courtesy of an extra few minutes to conclude a point.

*Pet* v. *Dept. of Health Services,* 228 Conn. 651, 662–63, 638 A.2d 6 (1994), dealt with the imposition of a time limit on cross-examination. The context of the time limit was dispositive in determining that it was not inappropriate.

The plaintiff's failure to take advantage of the fair opportunity to respond in writing is related to the time necessary to allow a fair oral argument. Similarly, the plaintiff's election to reserve to the May 8, 1995 hearing her concerns about the specificity of the findings undermines her objections.

The board's communications to the plaintiff concerning the procedure to be followed on remand express an openness to suggestions and input by the plaintiff. The record is devoid of any comment from the plaintiff until the literal eleventh hour. This pattern suggests the plaintiff's concerns as being procedural, as opposed to substantive. It is certainly long past the time for any

substantive issues relating to the termination to be aired and finally resolved.

Section 10-151 (f) provides in pertinent part that in the event of a tenured teacher termination appeal: "The board of education shall file with the court a copy of the complete transcript of the proceedings of the hearings held by the board of education or by an impartial hearing panel for such teacher . . . as shall constitute the record of the case."

The May 8, 1995 oral argument, discussion and vote were not transcribed. The plaintiff objected to the lack of a verbatim record at such hearing.

The defendant board argues that the statute refers to the evidentiary portion of such proceedings, not oral argument and board discussion. This construction is supported by a consideration of the teacher termination procedure outlined in § 10-151 (d). Termination hearings may be before a board of education subcommittee, impartial hearing panel or a single impartial hearing officer. The panel chosen holds an evidentiary hearing and makes findings and a recommendation to the board of education. Under the pertinent provisions of § 10-151 (d), the panel chosen "shall submit written findings and a recommendation to the board of education as to the disposition of the charges against the teacher . . . . The board of education shall give the teacher concerned its written decision within fifteen days of receipt of the written recommendation of the impartial hearing panel, subcommittee or hearing officer." Thus, the statute contemplates an evidentiary hearing before a panel which will make factual findings and recommendations to the full board of education, which will decide the case. See *Catino* v. *Board of Education*, 174 Conn. 414, 389 A.2d 754 (1978). The court interprets the reference in § 10-151 (f) to "complete transcript . . . of the hearing held by the board of education or by an impartial hearing

panel" to relate back to the board subcommittee or panel which heard the evidence in the case.

The plaintiff fails to provide any basis for the court to conclude the failure to provide a transcript of the May 8, 1995 proceeding in any way prejudiced her. Detailed minutes of the May 8, 1995 meeting are in the record. The plaintiff's counsel, at oral argument, acknowledged the accuracy of these minutes. A transcript would only have reflected the plaintiff's verbatim oral argument. There was no board discussion. The plaintiff on appeal must show not only a technical error, but that there is some resulting harm to her from such error. *Pet* v. *Dept. of Health Services*, supra, 228 Conn. 663. The failure to record the proceedings of May 8, 1995, did not adversely impact the plaintiff's substantive rights under § 10-151 or under the state and federal constitutions.

Additionally, the plaintiff was offered the opportunity to record the proceedings herself and made no effort to do so, or to request a continuance to make arrangements to do so. "In administrative appeals, we have held that the failure to utilize a remedy available to cure a defect deprives a complainant of the right to object to the alleged defect." Id., 664; *Dragan* v. *Connecticut Medical Examining Board*, 223 Conn. 618, 631, 613 A.2d 739 (1992); *Jutkowitz* v. *Dept. of Health Services*, supra, 220 Conn. 95–96.

The plaintiff's claim of bias is not supported by evidence of a disqualifying interest in the case. "It is presumed that members of administrative boards acting in an adjudicative capacity are unbiased." *Jutkowitz* v. *Dept. of Health Services*, supra, 220 Conn. 100; see also *Petrowski* v. *Norwich Free Academy*, 199 Conn. 231, 236, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107 S. Ct. 42, 93 L. Ed. 2d 5 (1986), involving a challenge to board of education members in a teacher termination

case. The party who contends that an adjudicator is biased bears the burden of proving the disqualifying interest. *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 361, 613 A.2d 254 (1992).

The claim of bias is allegedly evidenced by the failure of the board to discuss the findings after the plaintiff's oral argument on May 8, 1995. The board had received the record of the 1974 hearing by the January 4, 1995 transmittal. All board members had reviewed the materials prior to discussing them in public session on January 25, 1995. Proposed findings and a recommendation had been available since February 24, 1995. The plaintiff had declined to comment in writing on the proposed findings and recommendation.

The court cannot conclude from the record that the board acted improperly when it declined the opportunity to discuss or to amend its proposed findings and recommendation following the plaintiff's oral argument.

For the reasons set forth above, the court finds no violation of the plaintiff's rights.

The plaintiff's appeal is dismissed.