[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff Rocky Hill Associates Limited Partnership appeals the decision of the defendant Open Space and Conservation Commission granting the plaintiff a permit to conduct activities on a regulated wetlands area, subject to six conditions. The commission acted pursuant to Conn. Gen. Stats. sec. 22a-42a. Defendants Apple Grove Condominium Association and Lexington Estates Condominium Association are named defendants by virtue of their intervention pursuant to Conn. Gen. Stats. sec. 22a-19 (a). The plaintiff appeals the Commission's decision pursuant to Conn. Gen. Stats. sec. 42a-43. The court finds that the plaintiff is the owner of the property which was the subject of the Commission's decision and is, therefore, aggrieved by the decision. The court finds the issues raised by the appeal in favor of the plaintiff.
In 1997, this court decided a mandamus action concerning the subject matter of this case in favor of this plaintiff and observed, "This case presents the unusual but disturbing scenario of a party (the Plaintiff) who successfully appealed the denial of its application for its wetlands permit, but has been denied the fruits of its success." Rocky Hill LimitedPartnership v. Rocky Hill Open Space and Conservation Commission, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. CV96 056 49 75 (Sept. 24, 1997, McWeeny, J.). It is doubly disturbing that this statement remains true today, more than five years later. In this court's view, the proper resolution of the case was obtained even earlier, in 1995, when this court's decision under the same heading was filed in Docket No. 382158 (Burns, J.) on March 28, 1995. The chronological history of the controversy is set forth below.
In February 1990, the plaintiff filed an application with the defendant Commission for a permit to conduct regulated activity on its property at 1867 Silas Deane Highway in Rocky Hill. The property is zoned for commercial use, and the plaintiff planned to construct and develop a retail shopping center, an admittedly allowable use. CT Page 2
On July 11, 1990, after a lengthy public hearing on the plaintiffs application, the Commission denied the application. The Commission cited four reasons for the denial:
 1) that the project would have an adverse effect on the wetlands;
 2) that prudent and feasible alternatives were not addressed;
 3) that the project would cause irreversible and irretrievable commitments of natural resources; and
 4) that the project would be inconsistent with the town's plan of development as it related to protection of the environment.
The plaintiff appealed the denial to this court. After a hearing, the court rendered a decision holding that
 1) there was no substantial evidence that the project would have any adverse impact on wetlands, including wildlife;
 2) that prudent and feasible alternatives, however, were not adequately addressed;
 3) that the Commission failed to balance the need to protect the environment against the need for economic development of the state's resources; and
 4) that there was no substantial evidence that the proposed activity would be inconsistent with the town's plan of development.
The court remanded the case to the Commission with direction to state its findings of the facts on which it based its decision that any functions of the wetlands would be negatively impacted by the project, as well as the extent that any prudent and feasible alternatives would compensate for such impact. Rocky Hill Associates Limited Partnership v.Open Space and Conservation Commission, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 382158 (September 2, 1992, Burns, J.) (hereinafter to referred to as RHA I). CT Page 3
In December 1992, the Commission duly filed findings of fact in accordance with Judge Burns's remand order.
On March 28, 1995, following a second hearing on the appeal, including the Commission's newly filed statement of facts, Judge Burns rendered his final decision, which sustained the plaintiffs appeal without further orders. (RHA II)[1]
In RHA II, Judge Burns held that the plaintiffs plan to develop 1.10 acres of new compensatory wetlands would "result in no overall loss of wetland acres and no significant loss of wetland function." The court further held that these compensatory wetlands "constitute the only feasible and prudent alternative" to the loss of wetlands that would be lost to parking areas. With respect to the alleged impact that the project would have on the remaining wetlands areas on the property, the court noted that the Commission did not "balance" the value of preserving those wetlands against the competing interest in developing the property commercially. The court concluded its decision by stating that it found "no substantial evidence in support of the reasons given for the rejection of the (plaintiffs) application, after a due search of the record. The appeal is sustained."
The Commission did not appeal the court's decision in RHA II, and it therefore became this court's final judgment.
Following the decision but after the appeal period had run, the Commission filed a motion to open the judgment, asserting that the relief granted by the court in its decision required clarification. The plaintiff filed an objection. The court sustained the objection, thereby leaving its decision in place and unchanged.
From April 1995 until December 1996, the plaintiff attempted without success to persuade the Commission to act on its application for a permit in accordance with the court's decision in RHA II. On December 2, 1996, the plaintiff filed a civil action seeking a writ of mandamus compelling the Commission to act on the application for a wetlands permit in accordance with Judge Burns's decision in RHA II. On September 24, 1997, this court granted summary judgment in favor of the plaintiff, granting a writ of mandamus requiring the Commission (whose membership had changed since 1995) to review the original record and render a decision on the application.
On March 11, 1998, the Commission voted to approve the application for a permit, but attached six conditions. They are as follows:
CT Page 4 1) that the southeasterly portion of the tract including space designated for two parking lots be deeded to the town as open space;
 2) that the plaintiff establish a minimum 25' buffer zone around the wetlands;
3) that at least 1.7 acres of wetlands be "mitigated."
 4) that temporary sedimentation basins, to be installed during the construction of the shopping center, be redesigned for water quality purposes and permanently retained.
 5) that all utilities be brought into the project through the main right of way; and
 6) that the plaintiff submit new plans revised in accordance with these conditions for approval by the Commission.
The plaintiff does not object to conditions 2 and 5. Conditions 1, 3, 4, and 6 are the subject of the plaintiffs appeal to this court.
As noted, the decision of the Commission that is the subject of the plaintiffs appeal in this case was made pursuant to Judge McWeeny's grant to the plaintiff of the writ of mandamus and remand to the Commission for a new decision based on the original record. Judge McWeeny's decision, however, being a simply a coordinate decision of the Superior Court, obviously could not alter the substance of the Superior Court's previous final judgment on the issues rendered by Judge Burns. Rather, as requested in the plaintiffs prayer for relief in the mandamus action, the essence of Judge McWeeny's decision was to order the Commission to render a decision in compliance with Judge Burns's decisions. A crucial issue to resolve in determining the plaintiffs appeal in this case, therefore, is the scope and effect of Judge Burns's decisions in RHA I in 1992 and RHA II in 1995.
A review of the history of Conn. Gen. Stats. secs. 4-183, 22a-43, and 8-8
fails to clarify the precise statutory mandate to this court that was in effect at the time Judge Burns rendered those decisions. It is not necessary, however, to wade through the various changes in the statutory scheme to determine the effect of a decision which simply sustains an appeal and, directly or by implication, remands the case to the administrative agency for further action. Regardless of the precise CT Page 5 statutory language that specifies what action this court is authorized to take in deciding an appeal, an administrative agency which receives a case on remand must tailor its action to comply with the remanding court's decision as interpreted in light of that court's opinion. As the Supreme Court stated the rule in an analogous setting:
 Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that the trial court must observe. . . . Compliance means that the direction is not deviated from. The trial court cannot adjudicate rights and duties not within the scope of the remand. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed. The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. (Citations and internal quotation marks omitted. Emphasis in the original.) Halpern v. Board of Education, 231 Conn. 308, 311
(1994).
In the context of this case, the rule as enunciated by the Supreme Court in Halpern did not give the Commission a blank check to fashion an entirely new decision based only on its reading of the original record. Rather, the Halpern rule required the defendant Commission to act strictly in compliance with the substance of Judge Burns's decisions in RHA I and RHA II when, following the remand by Judge McWeeny, it issued its new decision on the plaintiffs application. It is noteworthy that Judge McWeeny cited Halpern as his principal authority in fashioning the plaintiffs remedy when granting the writ of mandamus and remanding the case to the Commission.
In this appeal, it is the court's task, therefore, to analyze the conditions imposed by the Commission on the issuance of the permit to determine whether they are consistent with this court's previous decisions in RHA I and RHA II, rendered by Judge Burns.
Condition #1 requires that the southeasterly portion of the parcel in CT Page 6 question be deeded as open space, thereby eliminating some planned parking area. As the defendant Commission contends in its brief to this court, the rationale for this condition was to mitigate the impact on the environment that the Commission envisaged the project would have. Specifically, the Commission contends that the "one for one' ratio of mitigation proposed in the plaintiffs original plan was inadequate and that more was needed. The Commission also apparently views this condition as a feasible and prudent alternative that the plaintiff is required to adopt. Defendant Commission's brief, pp. 10-13.
In RHA II, Judge Burns specifically held that the plaintiffs original mitigation plan, the development of 1.10 acres of wetlands to compensate for the loss of 1.3 acres of existing wetlands, is adequate and is also the "only feasible and prudent alternative." The Commission's subsequent imposition of the condition that the plaintiff devote an additional portion of the parcel as mitigation is, therefore, plainly in excess of and inconsistent with this court's mandate to the Commission in RHA II. And, as noted, Judge McWeeny's decision could not and did not intend to enlarge the Commission's mandate in this regard.
The Commission's condition #3, that the plaintiff provide an additional 1.7 acres of wetlands as further mitigation, may not be sustained by this court for the same reason as set forth with regard to condition #1, above.
Condition #4 would require the plaintiff to redesign and install permanently two "sedimentation basins" that were originally designed to be only temporary during the construction phase of the project. The rationale for this condition was the Commission's desire to provide protection from excess water runoff caused by the impervious surface of much of the construction project. See defendant Commission's brief, p. 14, and defendant condominium associations' brief, pp. 11-12. In essence, the Commission imposed the condition because of a concern that the drainage measures contained in the original plan were inadequate.
A commission's decision must be based on substantial evidence. Huck v.Inland Wetlands and Watercourses Commission, 203 Conn. 525 (1987), cited by all parties. The defendants do not point to any evidence in the record, expert or otherwise, that supports the decision that the temporary sedimentation basins should be redesigned to improve water quality and be made permanent. The only evidence cited by the defendants is the statement by one of the layman commissioners that the commissioners believed that they "need(ed) to slow down that (water runoff) more so than was in the plans." CT Page 7
In RHA II, Judge Burns reviewed the record of the commission's findings at its meeting before responding to the original remand for fact-finding. Judge Burns noted that "At the meeting, the first matter to be considered was the drainage review. The town engineer was of the opinion that this created no problem. The members were in accord." Based on this record, as summarized in RHA II, and Judge Burns's general conclusion that there is no substantial evidence in support of the reasons given for the rejection of the application," this court concludes that the Commission's imposition of the condition concerning the sedimentation basins is inconsistent not only with this court's decision in RHA II; it is also inconsistent with the Commission's findings in 1995 concerning the same subject.
For all of the reasons set forth above, this court concludes that the Commission exceeded its authority in imposing conditions 1, 3, and 4, and they may not be affirmed. It follows that condition 6, which requires the plaintiff to submit new plans showing compliance with the conditions, may not be affirmed.
The appeal is sustained. Inasmuch as the Commission approved the plaintiffs application subject only to the six conditions discussed herein and inasmuch as the court has determined that four of them were not authorized, the court finds that there is a particular action that the Commission is now required by law to take. The case is remanded, therefore, to the Commission and the Commission is ordered forthwith to issue the permit subject only to conditions 2 and 5, relating to the 25' buffer and the use of the main right of way for utilities service, respectively.
Maloney, Judge Trial Referee